Donald WAAGE, Plaintiff-Appellant,

v.

Dale E. BORER, a/k/a Dale E. Bower, Defendant-Respondent.

Court of Appeals

*No. 93–3010. Submitted on briefs September 15, 1994.—Decided October 12, 1994.*

(Also reported in 525 N.W.2d 96.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *William H. Holbrook* and *J. Phil Mueller* of *Dillman, Holbrook, Wurtz, Roth & Rostollan* of Sheboygan.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Laurence M. Moon* of Whitefish Bay.

Before Anderson, P.J., Brown and Nettesheim, JJ.

BROWN, J.   In *Watts v. Watts*, 137 Wis. 2d 506, 532-33, 405 N.W.2d 303, 314 (1987), our supreme court recognized actions in unjust enrichment by unmarried cohabitants following the termination of their relationships, for recovery of their share of wealth, accumulated through their joint efforts and retained by one of the parties in an unreasonable amount.

In this case, Dale E. Bower and Donald Waage were nonmarital cohabitants for about eight years.

325

Bower claimed money for her housekeeping efforts during that period of time, after Waage reneged on an alleged promise to marry her. A jury found that Waage was unjustly enriched by uncompensated services and benefits Bower provided during their relationship. We deem the issue to be whether the facts adduced at trial meet the legal standard set forth in *Watts*. We hold that the theory Bower commended to the jury and the facts adduced at trial do not meet the legal standard in *Watts* because there was no evidence of accumulation of wealth through their joint efforts. Thus, we reverse the trial court.

In 1981, Bower moved to Sheboygan, Wisconsin to live with Waage. The parties had the following arrangement. Waage paid for the apartment rent, utilities and groceries for the first two years of their cohabitation.[1] Bower bought groceries during the other years. For one year while Bower was unemployed, Waage paid for her health insurance premiums. Bower testified that she did all the laundry, ironing, mending and the cleaning of the apartment they shared and, at a cottage owned by Waage, that she cleaned, cooked for and entertained his children and weekend guests. Waage disagreed and testified that they evenly split the cooking and cleaning duties at the apartment and the cottage and that each was responsible for his or her own laundry and ironing.

---

[1] During that time, Bower was enrolled in a doctoral program and attending classes at the University of Wisconsin-Madison. Until the completion of her degree in 1983, she spent part of the week in Madison where she rented a room and the remainder of the week in Sheboygan where she and Waage shared an apartment. After getting her degree, Bower lived in Sheboygan full-time and worked for the University of Wisconsin Center in Sheboygan.

The parties kept their finances and property separate throughout their relationship. Bower made interest-free loans to Waage which he paid back and for which she never requested interest payment.

Bower testified that throughout most of their relationship, she hoped and believed they would eventually get married and there was discussion between them regarding marriage. They were never engaged, but at one point Waage purchased a diamond engagement ring and wedding band.

In 1989, Bower obtained employment as an Assistant Vice Chancellor for the University of Wisconsin at Racine and consequently moved to Racine. They continued to see each other on weekends for about two more years until Bower broke off the relationship, taking the rings with her.

Waage sued Bower for conversion of the rings. Bower counterclaimed that Waage told her she would "share in the appreciation of [his] wealth, [and she therefore] provided, without just compensation, services and benefits . . .." At trial, Bower submitted a calculation of the value of her domestic services to Waage at the apartment at the rate of $6 per hour or $3000 per year for eight years, for a total amount of about $25,000.

The trial court dismissed Bower's counterclaim on implied and express contract theories, but submitted verdict questions to the jury as to whether Waage was unjustly enriched by Bower's efforts.[2] The jury found that Waage was unjustly enriched and that Bower's damages were $25,000.

---

[2] On Waage's claim, the trial court submitted questions to the jury as to whether Bower converted the rings. The jury's verdict returned the rings to Waage; Bower does not appeal this determination.

██

Waage contends that the evidence was not sufficient to meet the *Watts* standard for unjust enrichment and, therefore, the question should not have been submitted to the jury. Waage raised this issue to the trial court in a motion to dismiss at the close of Bower's evidence. A motion to dismiss must be denied "unless the court is satisfied that, considering all credible evidence and reasonable inferences therefrom in the light most favorable to the party against whom the motion is made, there is no credible evidence to sustain a finding in favor of such party." Section 805.14(1), STATS. However, whether the factual findings fulfill a particular legal standard is a question of law which we review de novo. *See Corroon & Black-Rutters & Roberts, Inc. v. Hosch*, 109 Wis. 2d 290, 294, 325 N.W.2d 883, 885 (1982). Thus, whether the facts of the present case satisfy the legal standard for unjust enrichment set forth in *Watts* presents a question of law which we review de novo.

In *Watts*, our supreme court considered the sufficiency of a complaint to state an unjust enrichment claim.[3] *Watts* involved a dispute between Sue Ann Evans Watts and James Watts over their respective interests in property accumulated during their

[3] Unjust enrichment is based upon proof of three elements: "(1) a benefit conferred on the defendant by the plaintiff, (2) appreciation or knowledge by the defendant of the benefit, and (3) acceptance or retention of the benefit by the defendant under circumstances making it inequitable for the defendant to retain the benefit." *Watts v. Watts*, 137 Wis. 2d 506, 531, 405 N.W.2d 303, 313 (1987).

Additional issues before the *Watts* court were whether the plaintiff stated legally cognizable claims under four other legal theories. *Id.* at 510-11, 405 N.W.2d at 305.

nonmarital cohabitation relationship which spanned twelve years. *Watts*, 137 Wis. 2d at 510, 405 N.W.2d at 305. During that time, the parties held themselves out as husband and wife, they purchased property together and Sue Ann contributed personal property to the relationship. Sue Ann worked at James's business and later on worked forty to sixty hours per week at a business she started with James's sister-in-law. *Id.* at 514, 405 N.W.2d at 306-07. Upon the break up of their relationship, James barred Sue Ann from their home and her business.

As part of Sue Ann's unjust enrichment claim, she alleged that James accepted and retained the benefit of property and services she provided knowing that she expected to share equally in the wealth accumulated during their relationship and that under those circumstances it was unfair that he retain all the accumulated assets. The supreme court concluded that the facts alleged were sufficient to state a claim for recovery based upon unjust enrichment. It held "that unmarried cohabitants may raise claims based upon unjust enrichment following the termination of their relationships where one of the parties attempts to retain an unreasonable amount of the property acquired through the efforts of both." *Id.* at 532-33, 405 N.W.2d at 314. The *Watts* court reasoned that it would be against equity principles to allow one party to retain all the assets acquired through the efforts of both while the other party goes without " '[his or] her fair dues.' " *Id.* (quoting *Brooks v. Steffes*, 95 Wis. 2d 490, 508, 290 N.W.2d 697, 706 (1980)).

Thus, the holding of *Watts* is that in a nonmarital cohabitation situation, to recover for unjust enrichment, three conditions must be present: (1) an

accumulation of assets, (2) acquired through the efforts of the claimant and the other party and (3) retained by the other party in an unreasonable amount. In *Watts*, Sue Ann alleged the existence of all three conditions. *Id.* at 533, 405 N.W.2d at 314. Bower arguably alleged but did not set forth any evidence to satisfy any of these conditions.

Instead, Bower's case to the jury was that Waage retained a benefit because of her uncompensated housekeeping efforts made in contemplation of marriage. Under *Watts*, her case must fail. Bower presented absolutely no evidence of assets accumulated during their relationship. Without such evidence, we read her case to be that any kind of "benefit" conferred is a fait accompli to an unjust enrichment claim. However, that is not the holding of *Watts*. While Waage no doubt "benefited" from Bower's housekeeping services, that is not the type of "benefit" contemplated by the *Watts* court. *Watts* does not recognize recompense for housekeeping or other services unless the services are linked to an accumulation of wealth or assets during the relationship.[4] *See id.* at 532-33, 405 N.W.2d at

---

[4] This appeal does not present the issue of whether Bower and Waage had an express or implied contract for provision of housekeeping services. The trial court, we think properly, dismissed Bower's counterclaim on implied and express contract theories. There was no evidence that Waage accepted Bower's services with the knowledge that she expected to share assets. In fact, the testimony was that Bower kept records of their finances and that the parties settled up from time to time. Further, Bower's testimony was that in exchange for Waage paying for rent and utilities, she would clean, cook and buy groceries—that the arrangement was a "trade-off." She also testified, "I think we both probably contributed and we both probably gained from that."

314; *see also Watts v. Watts*, 152 Wis. 2d 370, 381-82, 448 N.W.2d 292, 296-97 (Ct. App. 1989) (appeal on the merits after remand). The *Watts* court defined benefit, for purposes of this kind of action involving unmarried cohabitants, as one which involves a joint accumulation of assets, an unreasonable amount of which is retained by one of the parties.

If we were to agree with Bower's theory in this case, we might functionally be recreating the former cause of action for breach of promise to marry. In 1959, our legislature abolished the cause of action for damages based on emotional harm caused by the breach. *See* § 768.01,STATS.; *Brown v. Thomas*, 127 Wis. 2d 318, 324-25, 379 N.W.2d 868, 871 (Ct. App. 1985). Bower's testimony at trial was that she provided housekeeping services "out of caring" and without expectation of compensation. That she may have provided those services under the hope or expectation of a future marriage is to no avail to her. *Watts* did not revive an action for breach of contract to marry for unfulfilled emotional expectations.

Bower also argues that Waage was unjustly enriched because she gave up job opportunities to live in Sheboygan with him. We fail to see how any foregone opportunities are relevant to the standard set forth in *Watts*—whether Waage retained "an unreasonable amount of the property" because of their joint efforts. *See Watts*, 137 Wis. 2d at 532-33, 405 N.W.2d at 314. Furthermore, the trial court did not allow in evidence regarding lost income and professional standing and Bower did not appeal this determination. For these reasons, we hold that this argument is not relevant to

331

this appeal.[5] We hold that the evidence viewed in a light most favorable to Bower did not meet the standard set forth in *Watts*.

*By the Court.*—Judgment reversed.

[5] Bower also contends that the parties' personal income tax returns admitted into evidence demonstrate that Waage enjoyed more financial growth during the period they lived together than she enjoyed. However, without evidence that Bower's contributions enhanced this alleged financial growth, we hold that the tax returns are not germane to Bower's unjust enrichment claim.