Sandra K. WARD, Plaintiff-Respondent,

v.

Dennis JAHNKE, Defendant-Appellant.

Court of Appeals

*No. 97–2145. Submitted on briefs April 24, 1998.—Decided June 10, 1998.*

(Also reported in 583 N.W.2d 656.)

■■■■■■■

■■■■

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Donald J. Murn* and *Michelle E. Martin* of *Murn Law Offices, S.C.* of Waukesha.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Gordon F. Barrington* of *Barrington Law Offices* of Wauwatosa.

Before Snyder, P.J., Nettesheim and Anderson, JJ.

SNYDER, P.J. Dennis Jahnke appeals from a judgment awarding Sandra K. Ward half of the equity in Jahnke's house. Ward, who cohabited with Jahnke for approximately twelve years, received a jury award of $45,000 based on a theory of unjust enrichment. Jahnke argues that: (1) Ward did not meet her burden of proof for an unjust enrichment claim based on the factors outlined in *Watts v. Watts,* 137 Wis. 2d 506, 405 N.W.2d 303 (1987); (2) the amount awarded is excessive because Ward was aware at the time the house was purchased that it was not titled in her name; and (3) the verdict violates public policy by putting Ward in a better position than if she had married Jahnke.

We conclude that Ward's unjust enrichment claim is circumscribed by the parameters of *Watts.* We therefore affirm the jury's verdict that Jahnke was unjustly enriched through Ward's efforts, but reverse the amount of the judgment awarded and remand the cause for a new trial on damages in accordance with this opinion. We further conclude that Jahnke's claim that the verdict violates public policy is without merit.

## STATEMENT OF FACTS

Ward and Jahnke met in 1982. They were unmarried cohabitants for approximately twelve years, from

mid–1983 until January 1995. Initially, Jahnke moved into Ward's apartment, which they shared for approximately forty-four months. At the time Jahnke moved in he brought his clothes and a work truck. After he moved in, Ward continued to pay the rent, although Jahnke occasionally contributed some money. Ward also paid all of the other household expenses, including utilities and food, although Jahnke bought groceries on occasion. The couple split most of their travel and entertainment costs.

In 1984, while sharing the apartment, the couple became engaged. Jahnke recalls that during this time he asked Ward "what she's doing for the next sixty years." Ward testified that during this same time period there was a discussion about trying to save for a home and that this would be accomplished by "me paying the bills and [Jahnke] accumulating the down payment."

At some point early in 1986 they began to look for a house to purchase. In October of that year Jahnke purchased a single-family home that he moved into with Ward. Although Ward accompanied Jahnke during most of the house hunting, Ward did not participate in any of the negotiations involved in the offer to purchase the house Jahnke ultimately bought, nor was she listed on any of the closing documents. Jahnke made a down payment of approximately $11,000 and subsequently made all mortgage and tax payments on the property. Ward testified that it was at the closing that she first became aware that she did not have an ownership interest in the house; however, she expected to acquire an interest when she and Jahnke married. Nonetheless, Ward admitted that she had no expectation that she would be getting married in the foreseeable future at the time the house was purchased.

During the entire time that Ward and Jahnke lived together, they kept all of their finances separate. They never held joint savings or checking accounts, purchased items together, took on any joint debt, loaned each other money or inquired as to how much money the other was earning. Ward continued to work throughout the period of cohabitation and never relied on Jahnke to support her financially. During the time they were living in the house, Ward did not pay any rent, although she paid the utility bills, purchased groceries and bought miscellaneous household items.[1]

During the years that Ward and Jahnke cohabited, Ward did the cooking, cleaning and laundry. Jahnke performed all maintenance work on the house or hired someone else to do any task he could not perform himself. He also did basic maintenance on Ward's vehicle as well as his vehicles. Although the costs of most trips taken by the couple were mutually shared, Jahnke paid for a cruise which was promised to Ward as part of a wager.

At no time during the period of cohabitation did Ward and Jahnke hold themselves out as husband and wife. Each maintained separate bank accounts and individual coverage for health insurance. Each purchased, paid for and maintained his or her own vehicle. Ward contributed to her own retirement account. Each had a savings account and filed an individual income

---

[1] At the time Jahnke asked Ward to move out, he gave her $1000, which she agreed was a fair amount for the items of furniture and window treatments that she had purchased while living in the house. He also gave her another $1000 for a security deposit and the first month's rent on an apartment. Because Ward agrees that the amount given to her for furnishings left at the house was fair, we do not consider those expenditures any further.

tax return. While Ward states that they were engaged to be married the entire eight years they lived in the house, she also admits that no wedding date was ever set, nor did she ever press Jahnke to marry her. In 1995, Jahnke terminated their relationship and asked Ward to move out of the house.

A jury found that Jahnke had been unjustly enriched through Ward's efforts and awarded her $45,000, which was one-half of the equity in the house. After the verdict was rendered, Jahnke brought a motion requesting judgment notwithstanding the verdict or to change the verdict answers. Jahnke also claimed that the verdict was excessive and that he should have a new trial. The trial court denied Jahnke's motion and granted judgment on the verdict. Jahnke now appeals.

## DISCUSSION

Ward maintains that during the years she and Jahnke lived together in her apartment, they had an agreement that she would take responsibility for most of their living expenses so Jahnke could save money for a down payment on a house. Ward claims that Jahnke told her that this was the plan and that she thought "that one day [she and Jahnke] would be married and [she] was always to be a part of this." She then argues that Jahnke has been unjustly enriched because he was able to accumulate a down payment on a house while she paid for nearly all of their household expenses. She also contends that because she moved into the house with Jahnke and continued to pay certain expenses, we should conclude that the house is an asset "accumulated through joint efforts and retained

544

by [Jahnke] in an unreasonable amount."[2] Jahnke denies ever discussing the accumulation of a down payment and argues that to affirm the trial court is to "put [Ward] in a better position than she would have been had the parties been married and divorced."

██

The gravamen of Jahnke's appeal is that Ward did not prove her claim for unjust enrichment as a matter of law. He maintains that the trial court erred when it denied his postjudgment motion because under the factors of *Watts* and *Waage v. Borer,* 188 Wis. 2d 324, 525 N.W.2d 96 (Ct. App. 1994), Ward has failed to prove a legally sufficient claim. Whether the facts of this case satisfy the legal standard for unjust enrichment set forth in *Watts* is a question of law which we review de novo. *See Waage,* 188 Wis. 2d at 328, 525 N.W.2d at 98.

██

In *Watts,* the supreme court determined that the cohabitant could plead a cause of action under a theory of unjust enrichment. The issue before us is whether the evidence presented by Ward satisfies the legal standard outlined in *Watts* for a showing of unjust enrichment. In general, an action for unjust enrichment requires proof of three elements:

> (1) a benefit conferred on the defendant by the plaintiff, (2) appreciation or knowledge by the defendant of the benefit, and (3) acceptance or retention of the benefit by the defendant under cir-

---

[2] Jahnke's home was originally purchased for approximately $66,000, and of that amount Jahnke put down approximately $11,000 as a down payment. Due to the market value increase in real estate, at the time of trial the house was valued at $104,000, and Jahnke's equity in the house was approximately $90,000.

cumstances making it inequitable for the defendant
to retain the benefit.

*Watts*, 137 Wis. 2d at 531, 405 N.W.2d at 313. Such a
claim does not arise out of an agreement between the
parties, but "is grounded on the moral principle that
one who has received a benefit has a duty to make
restitution where retaining such a benefit would be
unjust." *Id.* at 530, 405 N.W.2d at 313.

The *Watts* court, however, discussed at great
length specific facts it had before it. The court
described how the couple had lived together for twelve
years, had had two children and held themselves out as
husband and wife. Early in the relationship the plain-
tiff quit her job and moved into an apartment after the
defendant indicated that he would provide for her. She
not only provided housekeeping and child care services,
she had also worked as a receptionist, typist and assis-
tant bookkeeper in the defendant's business without
any compensation. Later during the period of cohabita-
tion the plaintiff started a business venture with the
defendant's sister-in-law, and at the time the relation-
ship dissolved, the defendant prevented her from
continuing that venture. The couple filed joint income
tax returns, had joint bank accounts, purchased real
and personal property together as husband and wife,
and had joint obligations on promissory notes.

After the relationship ended, the plaintiff asked
the court to order an accounting of the defendant's per-
sonal and business assets accumulated during their
years of cohabitation. She argued, inter alia, that it
was unfair for the defendant to have "accepted and
retained the benefit of services she provided knowing
that she expected to share equally in the wealth accu-
mulated during their relationship." *Id.* The supreme
court agreed; it ultimately determined that there were

three possible legal bases upon which the plaintiff's claim could stand: an express or implied in fact contract, unjust enrichment, or the doctrine of partition.

After an extensive rendition of the facts, the *Watts* court held, inter alia, that "*the facts alleged* are sufficient to state a claim for recovery based upon unjust enrichment." *Id.* at 533, 405 N.W.2d at 314 (emphasis added). The court pointed to these factors in reaching its conclusion:

> In this case, the plaintiff alleges that *she contributed both property and services to the parties' relationship*. She claims that because of these contributions the parties' assets increased, but that she was never compensated for her contributions. She further alleges that the defendant, *knowing that the plaintiff expected to share in the property accumulated*, "accepted the services rendered to him by the plaintiff" and that it would be unfair under the circumstances to allow him to retain everything while she receives nothing.

*Id.* (emphasis added).

Based on the above language from *Watts,* we conclude that the supreme court provided guidelines for the appropriate application of the theory of unjust enrichment between parties who were cohabitants. While we do not read the list of factors outlined in *Watts* as a "checklist," we conclude that the supreme court's application of unjust enrichment as a legal theory of recovery includes a requirement that the complaining party present proof of specific contributions that directly led to an increase in assets or an accumulation of wealth. Additionally, we read the *Watts* holding as requiring a plaintiff to put forth facts which indicate a shared enterprise and some form of proof that the assets or property in dispute were

"acquired *through the efforts of both*."[3] *Id.* (emphasis added).

The *Watts* court pointed to the commingled nature of the couple's finances as one indicia of the couple's commitment to a shared enterprise and common undertaking. The couple also worked together for a number of years in a business; the woman's efforts were not compensated. Every aspect of their financial dealings evinced effort directed toward a common goal. The court quotes with approval another court's statement that "joint acts of a financial nature can give rise to an inference that the parties intended to share equally." *Id.* at 529, 405 N.W.2d at 313 (quoted source omitted). The court also recognized that the woman's claim was founded on an implied agreement by the defendant to share "the property *accumulated through the efforts of both parties during their relationship.*" *Id.*

---

[3] This statement in *Watts v. Watts,* 137 Wis. 2d 506, 533, 405 N.W.2d 303, 314 (1987), is followed by a footnote. In each of the cases in the footnote, a cohabitant's claim was founded upon specific facts that showed a mutual undertaking or joint effort. *See, e.g., Harman v. Rogers,* 510 A.2d 161, 165 (Vt. 1986) (plaintiff who ran day-to-day operations of a store for cohabitant due restitution for efforts); *Collins v. Davis,* 315 S.E.2d 759, 761 (N. C. Ct. App.) (plaintiff can maintain an action to recover money and labor expended on property titled in cohabitant's name), *aff'd,* 321 S.E.2d 892 (N.C. 1984); *Mason v. Rostad,* 476 A.2d 662, 666 (D.C. 1984) (plaintiff who remodeled cohabitant's home entitled to recover funds expended and the reasonable value for the work performed); *In re Estate of Ericksen,* 337 N.W.2d 671, 674 (Minn. 1983) (where cohabiting parties shared equally all costs and expenses in connection with a home purchase, including purchasing a term life insurance policy to protect the mortgage holder, surviving cohabitor properly awarded a one-half interest in the house).

(emphasis added). In recognizing unjust enrichment as an alternate theory of recovery, the court reiterated the necessity of a showing of shared enterprise:

> [U]nmarried cohabitants may raise claims based upon unjust enrichment following the termination of their relationships where one of the parties attempts to retain an unreasonable amount of the property *acquired through the efforts of both.*

*Id.* at 532–33, 405 N.W.2d at 314 (emphasis added). We read *Watts* as requiring a showing that the cohabitants engaged in an accumulation of assets *as a couple. Watts* stands for the proposition that a party seeking a division of assets following a period of cohabitation must provide evidence of shared enterprise.

This reasoning is further supported by our analysis in *Waage* where we applied the *Watts* standard and stated that "*Watts* does not recognize recompense for housekeeping or other services unless the services are *linked to an accumulation of wealth or assets during the relationship.*" *Waage,* 188 Wis. 2d at 330, 525 N.W.2d at 98 (emphasis added; footnote omitted). We also outlined the following requirements for a viable unjust enrichment claim:

> (1) an accumulation of assets, (2) *acquired through the efforts of the claimant and the other party* and (3) retained by the other party in an unreasonable amount.

*Id.* at 329–30, 525 N.W.2d at 98 (emphasis added).

Applying *Watts* and *Waage,* we consider the evidence presented by Ward. For more than three and one-half years, she took primary responsibility for all living expenses. Ward claimed that this financial

arrangement was agreed to by both parties in order to realize a common goal—the purchase of a house. Jahnke concedes that while the couple was living in the apartment, Ward paid "[m]ost of" the expenses. Ward testified that she expected that "[she] was always to be a part of this." At the end of this time period, Jahnke had accumulated approximately $11,000, and this money was used for a down payment on a house.

Applying the *Watts* criteria to the above facts, we affirm the jury's finding that Ward's assumption of most household expenses for forty-four months was predicated on a mutual undertaking to accumulate a down payment on a house. The length of time this arrangement persisted, with undisputed testimony that Ward assumed nearly all of the couple's living expenses, coupled with the fact that Jahnke then made a substantial down payment on a house lends credibility to Ward's claim that this was a shared undertaking. Although Jahnke denies having had a specific discussion regarding the accumulation of money for a down payment, he testified that he and Ward became engaged during this time period and that he had asked her "what she's doing for the next sixty years." This portion of Ward's claim satisfies the *Watts* unjust enrichment criteria—that there was "property acquired through the efforts of both." *Watts,* 137 Wis. 2d at 533, 405 N.W.2d at 314. We agree that under these facts, Ward's assumption of the cost of the couple's living expenses was a benefit conferred on Jahnke which resulted in an accumulation of an asset—the down payment.

However, under the *Watts* requirement of a showing of mutual undertaking, Ward's claim fails as to the time period following the purchase of the home. Not only does Ward's claim lack even a single *Watts* factor,

her testimony as to their financial arrangements shows only that she and Jahnke were cohabitants who divided their household expenses in such a way that it made it easy to maintain separate finances and avoid commingling their individual resources.

The evidence put forth by Ward shows that at the time Jahnke closed on the house, she knew that the title was in his name alone. Jahnke paid all expenses associated with the mortgage, taxes and maintenance on the home. Although Ward brought some furniture and other items into the shared living arrangement and over the years purchased some items for the house, by her own admission $1000 was a fair payment for all of these items that were retained by Jahnke. Ward and Jahnke never pooled any resources or handled any money jointly. Ward never cosigned any promissory notes. She conceded that the increase in the value of the house was due to market factors and not to any specific improvements that she provided. Although Ward paid for groceries and utilities while living in the house, this fact is not indicative of a shared enterprise when the other cohabitant is paying a proportionate share of the expenses. Rather, it can just as readily be inferred that such an arrangement evinces a decision by the cohabitants to keep their financial arrangements separate and that Ward's assumption of the costs of the utilities and groceries was in lieu of rent.

We conclude that Ward has failed to satisfy the *Watts* standard of showing a mutual effort toward the accumulation of assets for the time period following the purchase of the home. Based on this, Ward's unjust enrichment claim as to this time period fails. In considering the factors that underpinned the decision in *Watts,* an unjust enrichment claim by cohabitants must show proof of more than a desire to share living

expenses. *Cf. Waage,* 188 Wis. 2d at 330–31, 525 N.W.2d at 98–99 (in order for services to be considered, they must be linked to an accumulation of assets). Ward cannot claim that her assumption of the costs of the utilities and groceries in a shared living arrangement, while living rent free, entitles her to share in the equity of a house titled in another's name. Evidence of a mutual undertaking is completely lacking.

Jahnke also claims that public policy "prohibits Ward from recovering any monies from [him] based on the facts of this case." He argues that a judgment for Ward would "put her in a better position than she would have been had the parties been married and divorced." We must disagree. Our supreme court has determined that "public policy does not necessarily preclude an unmarried cohabitant from asserting a contract claim against the other party to the cohabitation so long as the claim exists independently of the sexual relationship and is supported by separate consideration." *Watts,* 137 Wis. 2d at 529, 405 N.W.2d at 313. Jahnke argues that there is no separate consideration; Ward's claim is founded only on the couple's sexual relationship.

Ward, however, did not bring a contract claim. An action for recovery based on unjust enrichment "is grounded on the moral principle that one who has received a benefit has a duty to make restitution where retaining such a benefit would be unjust." *Id.* at 530, 405 N.W.2d at 313. To permit Jahnke to retain the benefit of an accumulation of more than $11,000, under an arrangement that was predicated on a mutual goal of saving for a down payment on a house, would be unjust. We therefore reject his public policy argument.

We affirm that portion of the judgment which found that Jahnke was unjustly enriched through the efforts and contributions of Ward while living with her in her apartment. However, we reverse the award of $45,000, concluding that Ward failed to present evidence of a shared undertaking or accumulation of assets that both cohabitants expected to share equally after Jahnke purchased the house. *See id.* at 533, 405 N.W.2d at 314. We remand for a new determination of damages by trial or an alternative procedure acceptable to the parties and in accordance with this opinion.

Costs are denied to both parties.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions.