Dwaine HALVERSON, Plaintiff-Appellant,

v.

RIVER FALLS YOUTH HOCKEY ASSOCIATION, Defendant-Respondent.

Court of Appeals

*No. 98–2445. Submitted on briefs February 9, 1999.——Decided March 30, 1999.*

(Also reported in 593 N.W.2d 895.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Matthew A. Biegert* and *Brian Sande* of *Doar, Drill & Skow, S.C.* of New Richmond.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Dean R. Rohde* of *Bye, Goff & Rohde, Ltd.* of River Falls.

Before Cane, C.J., Myse, P.J., and Hoover, J.

HOOVER, J.    This is a landlord-tenant dispute in which Dwaine Halverson appeals a partial summary judgment and judgment after trial. Three issues are involved: (1) which statutes are to be used when a lease with a term of more than one year is challenged as unenforceable under the statute of frauds; (2) what, if any, remedies exist in light of a statute of frauds defect; and (3) was the evidence sufficient to prove unjust enrichment. Halverson contends that the trial court erred by holding that the remedy for breach of a lease that violated the statute of frauds was under ch. 704,

STATS. (leases), and not ch. 706, STATS. (real estate conveyances), and thus limited to rent abatement. He also argues that the court erroneously denied his claim for unjust enrichment because it was undisputed that he expended a substantial amount of money improving the building. We hold that when the parties' repair obligations are not in writing and a landlord breaches its duty to repair the premises, the tenant's remedy is rent abatement. Further, the trial court correctly concluded that there was insufficient evidence that the River Falls Youth Hockey Association derived a benefit from Halverson's improvements. We therefore affirm.

## BACKGROUND

Halverson was looking for a facility in which to commercially grow mushrooms. The association had purchased the property in question for $41,500. The building, for which the association had no immediate use, had a leaky roof and was generally in poor repair. The parties discussed leasing the building and, in February 1994, agreed to enter into a lease. The lease term was to be for longer than one year. Shortly thereafter, Halverson took possession of the building and began to improve it for his own use. He expended in excess of $20,000 to, inter alia, repair the heating, electrical and plumbing systems and install a new septic system. After he took possession, two written proposed leases were prepared, one in May and the other in June. Halverson signed the second lease; the association signed neither.

Halverson constantly expressed concern to the association over the roof's condition. The parties differ over what the association agreed to do in connection

with the roof.[1] Halverson contends he was told it would be repaired, "whatever it took . . . ." The association asserts that it did not have money to expend on the building and therefore promised to repair the roof only if it could be done for minimal expense with volunteer labor. On July 30, 1994, the parties finally inspected the roof and determined that it needed to be replaced, which, the association told Halverson, was beyond its ability to do. The parties discussed selling the building to Halverson, but that never occurred. Despite the roof problem, Halverson forged ahead with mushroom production. His crops consistently failed, which he attributed to the leaky roof.[2] By January 1995, he had vacated the building.

Halverson subsequently sued the association, seeking damages for breach of contract and his out-of-pocket expenses as a result of its failure to repair or replace the roof. The association moved for partial summary judgment, contending that the statute of frauds, § 704.03, STATS., barred enforcement of the written lease's terms. The trial court granted the motion. It then concluded that Halverson's remedy for the breach of the lease was limited to rent abatement under § 704.07(4), STATS.,[3] the amount of which was to

[1] The unsigned leases purported to assign responsibility for roof repair to the association.

[2] Mushroom growth requires a semi-sterile environment. In the absence of semi-sterile conditions, undesirable fungi will crowd out the mushrooms. Halverson asserts that the roof leaks introduced undesirable fungi into the growing areas.

[3] Section 704.07(4), STATS., provides, in pertinent part:

(4) Untenantability. If the premises become untenantable . . . or if there is a substantial violation of sub. (2) [which contains the landlord's repair obligation] materially affecting the health or safety of the tenant, the tenant may remove from the premises . . . . If the

be determined at trial. Halverson was free to pursue other claims not based on the lease. These remaining issues were tried to the court.[4]

Halverson first raised unjust enrichment as a theory of recovery at trial in his closing argument.[5] He asserted that the improvements he made benefited the association. As evidence of that, he pointed to both the cost of the improvements and the association's offer to sell him the building for between $80,000 to $100,000 when it had paid only $41,500 for it. The trial court found that Halverson was entitled to rent abatement of $1,500 and that he had not proven his unjust enrichment claim. This appeal ensued.

tenant remains in possession, rent abates to the extent the tenant is deprived of the full normal use of the premises. This section does not authorize rent to be withheld in full, if the tenant remains in possession.

*See also Logterman v. Dawson*, 190 Wis. 2d 90, 526 N.W.2d 768 (Ct. App. 1994).

[4] Included was Halverson's claim that Daniel Ross and other association members had misrepresented that the association would fix the roof, "whatever it took . . . ." The trial court ruled against Halverson on that claim, finding that he had no reasonable expectation that the association's promise was anything more than a promise to repair the roof if it could be done for minimal expense and with volunteer labor. Halverson has not appealed this finding.

[5] Halverson had raised unjust enrichment as a means to avoid the statute of frauds. Section 706.04(3), STATS., discussed below, affords equitable relief when there is partial performance of a lease that does not comply with the statute of frauds. Section 706.04(2) provides relief if failure to enforce the lease transaction would unjustly enrich the party against whom enforcement is sought.

## ANALYSIS

1. Trial Court's Grant of Partial Summary Judgment

Whether the trial court properly granted the association's motion for summary judgment is a question of law we review without deference to the trial court, *see Gaertner v. Holcka*, 219 Wis. 2d 436, 445–46, 580 N.W.2d 271, 275 (1998), but we nonetheless value a trial court's analysis. *M & I First Nat'l Bank v. Episcopal Homes Mgmt.*, 195 Wis. 2d 485, 497, 536 N.W.2d 175, 182 (Ct. App. 1995). In determining if the trial court properly granted summary judgment, we apply the same methodology as the trial court. *Id.* at 496, 536 N.W.2d at 182. Because summary judgment methodology is well known, we need not repeat it, except to observe that "summary judgment shall be rendered when no genuine issue as to any material fact exists and the moving party is entitled to a judgment as a matter of law." *See Grams v. Boss*, 97 Wis. 2d 332, 337, 294 N.W.2d 473, 476 (1980) (citing § 802.08(2), STATS.).

## STATUTES INVOLVED

It is necessary to refer to a number of statutes in determining one of the issues before us. Therefore, we set forth the statutes in question in advance of our analysis to serve as a reference. As indicated above, ch. 704, STATS., is concerned with leases, while ch. 706, STATS., pertains to real estate conveyances. Both apply to a lease for more than one year. *See* §§ 704.01, and 706.01, STATS. The lease the parties discussed was undisputedly for a term of longer than one year. Both chapters contain statutes of fraud. *See* §§ 704.03(1) and 706.02(1), STATS. Section 704.03(1) provides in pertinent part:

> Requirement of writing for rental agreements and termination. (1) Original agreement. A lease for more than a year, or a contract to make such a lease, is not enforceable unless it meets the requirements of s. 706.02 and in addition sets forth the amount of rent or other consideration, the time of commencement and expiration of the lease and a reasonably definite description of the premises . . . . Sections 704.05 and 704.07 govern as to matters within the scope of such sections and not provided for in such written lease or contract.

Section 706.02, incorporated into § 704.03(1), provides in part:

> Formal requisites. (1) Transactions under s. 706.01(1) shall not be valid unless evidenced by a conveyance which:
> (a)  Identifies the parties; and
> (b)  Identifies the land; and
> (c)  Identifies the interest conveyed, and any material term, condition, reservation, exception or contingency upon which the interest is to arise, continue or be extinguished, limited or encumbered; and
>
> . . . .
> (e)  Is signed by or on behalf of all parties, if a lease or contract to convey; and
>
> . . . .
> (g)  Is delivered . . . .

Both chapters also contain their own version of part performance of a lease that fails to comply with the statute of frauds. Section 704.03(2) provides:

> Entry under unenforceable lease. If a tenant enters into possession under a lease for more than one year which does not meet the requirements of sub. (1) . . . [e]xcept for duration of the tenancy and matters

111

within the scope of ss. 704.05 and 704.07, the tenancy is governed by the terms and conditions agreed upon.

Section 706.04 provides:

> Equitable relief. A transaction which does not satisfy one or more of the requirements of s. 706.02 may be enforceable in whole or in part under doctrines of equity, provided all of the elements of the transaction are clearly and satisfactorily proved and, in addition:
>
> . . . .
>
> (2)   The party against whom enforcement is sought would be unjustly enriched if enforcement of the transaction were denied; or
>
> (3)   The party against whom enforcement is sought is equitably estopped from asserting the deficiency.

Chapter 704 also contains a partial statutory lease in §§ 704.05 and 704.07, which supply certain provisions in the absence of a written agreement.

In granting the association summary judgment, the trial court first determined that § 704.03, STATS., the statute of frauds and part performance section for leases, controls and provides the lease terms when there is part performance. It further concluded that ch. 706, STATS., does not apply to this lease. The trial court found that the association breached its statutory obligation under § 704.07, STATS., to repair the roof. It further reasoned that § 704.07 applies "in the situation where you are dealing with repair obligations . . . unless there is a writing signed by the parties. And there isn't one . . . so the section clearly applies."[6]

---

[6] Section 704.07(1), STATS., provides: "Application of section. This section applies to any nonresidential tenancy *if there is no*

Halverson contends that the association is equitably estopped under § 706.04, STATS., from asserting the statute of frauds, § 706.02, STATS., as a defense. For authority, he directs us to *Rossow Oil Co. v. Heiman*, 72 Wis. 2d 696, 709, 242 N.W.2d 176, 183 (1976). The association, citing *Logterman v. Dawson*, 190 Wis. 2d 90, 526 N.W.2d 768 (Ct. App. 1994), responds that because both parties never signed a lease, § 704.03(2), STATS., applies and, as a result, § 704.07(4), STATS., limits Halverson's remedy to rent abatement. Thus, the association would have us focus solely on the lease chapter and Halverson on the conveyance chapter.

In *Rossow*, our supreme court held that § 706.04, STATS., applies to leases that are for more than one year: "Part performance, especially under the new statute, is a basis for satisfying the statute of frauds applicable to land conveyances, *including rental of land for a period longer than a year*." *Id.* at 709, 242 N.W.2d at 183 (emphasis added). In addition, ch. 706 by its terms applies to a lease with a term of more than a year.[7] To the extent that the trial court's decision is

---

contrary provision in writing signed by both parties and to all residential tenancies." (Emphasis added.)

[7] Section 706.01, STATS., provides in pertinent part:

Subject to the exclusions in sub. (2), this chapter shall govern every transaction by which any interest in land is created, aliened, mortgaged, assigned or may be otherwise affected in law or in equity.

(2) Excluded from the operation of this chapter are transactions which an interest in land is affected:

. . . .

(c) By lease for a term limited to one year or less; or by contract or option to lease for such period which postpones the commencement of the agreed lease to a time not later than 60 days after the date of the contract or option; or by assignment, modification or termination of lease when, at the time such assignment, modification or termination is made, the unexpired term is limited to one year or less, and remains so limited under the lease as

based upon its conclusion that § 706.04 does not apply to this lease, we disagree. We nonetheless concur with the result, although for different reasons. *See State v. Holt*, 128 Wis. 2d 110, 124, 382 N.W.2d 679, 687 (Ct. App. 1985) (court of appeals will affirm trial court's decision if it reached the right result for the wrong reason).

It is undisputed that there is no writing signed by both parties governing any aspect of this lease, much less the parties' repair obligations. Section 704.07(1), STATS.,[8] applies to all nonresidential leases when the parties fail to provide repair provisions in a writing signed by both parties. Thus, for there to be a remedy for a breach of a duty to repair *other* than that provided in § 704.07, the obligation must be in a written lease signed by both parties. This requirement that the repair provision be in a signed writing is in addition to those set forth in the two statutes of frauds, §§ 704.03 and 706.02, STATS.[9] If there were no statute addressing a breach of a duty to repair, there might be merit to Halverson's argument that the terms of the unsigned lease should be enforced under § 706.04, STATS.,[10] and that a breach thereof would give rise to contract remedies. Section 704.07, however, expressly supplies the

---

modified; except that instruments relating to such excluded transactions, if in recordable form, shall be entitled to record.

[8] *See* note 6.

[9] The equitable relief section in the conveyance chapter only reaches noncompliance with the conveyance statute of frauds. On it terms its does not apply to a failure to reduce terms to writing where required under ch. 704, STATS. *Rossow* recognized that § 706.04 does not apply to § 704.03, STATS. *Rossow Oil Co. v. Heiman*, 72 Wis. 2d 696, 709, 242 N.W.2d 176, 183 (1976).

[10] This assumes he could prove compliance with the other requirements of § 704.03, STATS.

lease with the parties' repair obligations and the remedy for breach thereof.

Section 704.07, STATS., imposes a requirement in addition to what is found in the conveyance statute of frauds, that the repair provisions be in a writing signed by both parties. Failure to do so results in the statutory lease provisions, including the statutory remedy of rent abatement, being read into the lease. Section 706.04, STATS., does not apply to cure noncompliance with § 704.07(4). Because Halverson's claims were based on the association's failure to repair or replace the roof, § 704.07 applies to limit his remedy. The trial court therefore correctly concluded that Halverson's remedy was limited to rent abatement under § 704.07(4).

2.  Unjust Enrichment

The review of an unjust enrichment claim presents a mixed question of fact and law. *Waage v. Borer*, 188 Wis. 2d 324, 328, 525 N.W.2d 96, 97–98 (Ct. App. 1994). The trial court's factual determinations will be upheld unless they are clearly erroneous. Section 805.17(2), STATS. The application of those facts to the legal standard for unjust enrichment, however, presents a question of law we review de novo. *Id.* at 328, 525 N.W.2d at 98.

A plaintiff may recover on a quasi-contract claim for unjust enrichment when the plaintiff has conferred a benefit upon the defendant, the defendant appreciates or knows of the benefit, and retention of the benefit without payment would be inequitable. *Quinnell's Septic & Well Serv. v. Dehmlow*, 152 Wis. 2d 313, 316, 448 N.W.2d 16, 18 (Ct. App. 1989). A plaintiff's expenditure alone does not, however, support an

unjust enrichment claim. *See Management Computer Servs. v. Hawkins, Ash, Baptie & Co.*, 206 Wis. 2d 158, 188–89, 557 N.W.2d 67, 80 (1996); WIS J I—CIVIL 3028. In addition, damages must be proven with reasonable certainty such that the trial court could make a fair and reasonable approximation. *Hawkins*, 206 Wis. 2d at 189, 557 N.W.2d at 80.

Halverson contends the trial court erred by denying his claim for unjust enrichment for two reasons. He proved that he spent a substantial amount for improvements to the building constituting evidence that the association benefited. He further argues that a benefit was shown by the association's offer to sell for an amount that it believed was the property's fair market value and was $38,500 to $58,500 more than the association had recently paid for the property. The trial court concluded that there was insufficient evidence to establish to a reasonable certainty that the association benefited from Halverson's improvements or the amount of the purported benefit. The only evidence concerning the improved building's value was the offer to sell, and the court found that to be of insufficient weight to base a finding that the improvements increased the value of the premises several fold. This was especially so given that the building was vacant and still in need of substantial repairs, including replacement of the roof at a cost of at least $10,000. The trial court declined to guess the value of the benefit, if any, that Halverson's improvements conferred upon the association.

Halverson's argument ignores the trial court's findings, supported by the record, and our standard of review. The record discloses that the association has done nothing with the building since Halverson left; it

remains vacant and in need of considerable repair. There was testimony that the septic system was the only improvement of value, but that it was unnecessary, too small for the square footage, and would have to be replaced if someone else used the entire building. There was some tentative testimony that the well repair *might* have been of value, but the association was not aware of it being a problem before Halverson took possession. There was no evidence that the association used the improvements. We defer to a trial court's assessment of the weight and credibility of evidence. *See* § 805.17(2), STATS. We cannot conclude that the trial court's findings were clearly erroneous. Making improvements alone does not prove the association received any benefit from them.

Halverson nonetheless contends that the association derives an indirect benefit through an increase in the property's value. He points to a letter stating:

> The Hockey Association is not opposed to selling the property to Mr. Halverson at its fair market value, which they believe would be in the $80,000 - $100,000 range, *but are not certain, as they are in the process of establishing the value.* In your letter you offer $35,000, which is significantly less than the Hockey Association paid for the property, so that offer is rejected. (Emphasis added.)

This is insufficient evidence of fair market value. Neither we nor the trial court has any basis independent of the parties' beliefs to choose between their respective surmises that the property was worth $35,000 or between $80,000 to $100,000. In fact, Halverson's offer of $35,000 might suggest the property was worth less after Halverson vacated than the $41,500 the association paid for it. The trial court did not err when it refused to guess at the value of any

benefit that may have been conferred upon the association. Halverson has failed to meet his burden of proof to show that the association received a benefit and, if it did, the amount thereof.

## CONCLUSION

Section 704.07, STATS., applies to this lease because the repair provisions were not contained in a writing signed by both parties. Given that, Halverson's remedies under the lease for the association's failure to repair or replace the roof are limited to rent abatement under § 704.07(4). As to the unjust enrichment claim, we concur with the trial court that Halverson has not met his burden of proof. He has shown that he expended sums to his detriment in making improvements to the building, but not that the association thereby benefited, nor the amount of the claimed benefit.

*By the Court.*—Judgments affirmed.