# Susan ULRICH, Plaintiff-Appellant,

v.

# Glenn ZEMKE and Nekoosa Credit Union, Defendants-Respondents.†

Court of Appeals

*No. 01–2195. Submitted on briefs April 17, 2002.—Decided September 19, 2002.*

## 2002 WI App 246

(Also reported in 654 N.W.2d 458.)

† Petition to review denied 12-10-02.

181

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Dana W. Duncan* of *Schmidt, Grace & Duncan* of Wisconsin Rapids.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Sandra J. Zenor* of *LaChapelle, Rushevics & Lloyd* of Wisconsin Rapids.

Before Roggensack, Deininger and Lundsten, JJ.

¶ 1. ROGGENSACK, J. Susan Ulrich appeals the judgment which resulted from an action for unjust enrichment dividing Ulrich and Glenn Zemke's real and personal property. Ulrich argues that the court applied an improper standard of law to her claim to a parcel of real estate located on Badger Road in Adams County (Badger). Ulrich also argues that the circuit court made erroneous findings of fact regarding the value of the parties' real estate and credits to be afforded to each party and that the circuit court calculated the equaliza-

tion payment incorrectly. Because we agree that the circuit court applied an improper legal standard to Ulrich's unjust enrichment claim, we reverse the judgment awarding Zemke sole ownership of Badger. Additionally, because the equalization payment does not currently include consideration of Badger, we remand to the circuit court to divide Badger and its proceeds and to adjust the equalization payment accordingly. In all other respects, we affirm the judgment.

## BACKGROUND

¶ 2. Glenn Zemke and Susan Ulrich lived together in Friendship, Wisconsin from November 1989 to January 1997. They have two children together and Ulrich has two children from a previous marriage. During the period of their cohabitation, Zemke and Ulrich both worked for Georgia-Pacific and earned comparable incomes. They maintained separate checking accounts but shared living expenses, including grocery and medical bills, life insurance, clothing expenses for the children,[1] mortgage payments, telephone bills, utilities and miscellaneous household expenses. They also acquired three parcels of land: their residence (Homestead), real estate located on Buttercup Avenue (Buttercup) and Badger.

¶ 3. Zemke purchased Homestead in June 1989 as a small cabin, with a tiny bathroom, kitchen and one bedroom. In 1991, Zemke re-deeded the house to himself and Ulrich as joint tenants. To pay for home improvements, Zemke and Ulrich invested personal funds and refinanced the house through Nekoosa Credit Union for $55,000 in 1991 and for $66,000 in

---

[1] Ulrich received $750 in child support each month for her two children from a previous marriage.

1992. Together Zemke and Ulrich made significant improvements to the cabin such as adding bedrooms, tile and stone work, painting, varnishing and re-insulating. It is now a six-bedroom house with 4,000 square feet of living space.

¶ 4. Zemke and Ulrich purchased their second parcel of real estate, Buttercup, in September of 1991. While Buttercup was titled in Zemke's name alone, both Ulrich and Zemke made regular monthly mortgage payments on the property. In May of 1996, Ulrich and Zemke sold five acres of Buttercup and used the proceeds to repay a debt to Zemke's brother and to defray household expenses. After the couple separated, Zemke sold approximately ten acres of Buttercup in November of 1997 for $12,500 and approximately nine acres in November of 1998 for $2,520. Zemke retained the proceeds of the two sales.

¶ 5. The third parcel of real estate, Badger, was purchased in September of 1995. Zemke assumed a note of the prior owner, using Buttercup as collateral. The real estate was placed in Zemke's name and he paid the interest on the debt obligation. In 1996, two parcels from Badger were sold for a total of $35,200 and the proceeds used to reduce the mortgage balance on Badger, pay land survey costs and continue home improvements. Some of the proceeds may have also gone into Zemke's savings. In January of 1998, after the couple separated, Zemke sold a third parcel of Badger for $11,500 and retained the proceeds from the sale.

¶ 6. Following Ulrich and Zemke's separation, Ulrich initiated an action against Zemke and Nekoosa Credit Union[2] based on unjust enrichment, requesting

---

[2] Nekoosa Credit Union holds a mortgage lien on Homestead for which Zemke and Ulrich are jointly and severally

the court to partition the parties' real and personal property. Following a court trial, the circuit court awarded Ulrich the residence and Buttercup, but required her to pay an equalization payment of $36,043 to Zemke for transferring the property. The court also divided the parties' personal property. However, the circuit court rejected Ulrich's claim to Badger and awarded Zemke sole ownership because Ulrich failed to demonstrate a "shared enterprise between the parties to justify an award to her of part of the Badger real estate."

¶ 7. Ulrich makes two arguments on appeal. First, she contends that the circuit court erred by rejecting her claim to Badger because the court applied an improper standard of law to her unjust enrichment claim. Second, Ulrich argues that the circuit court made erroneous findings of fact regarding the net value of the parties' real estate and credits to be afforded to each party and calculated the equalization payment incorrectly.

## DISCUSSION

### Standard of Review.

¶ 8. A circuit court's decision to grant equitable relief in an action for unjust enrichment is discretionary. *See Watts v. Watts*, 137 Wis. 2d 506, 530–34, 405 N.W.2d 303, 313–15 (1987). Discretionary decisions are sustained if the circuit court examined the relevant facts, applied a proper standard of law, and using a rational process, reached a conclusion that a reasonable

---

liable. Because the mortgage will be protected despite the outcome of this action, Nekoosa Credit Union did not participate in the court trial or this appeal.

judge could reach. *Loy v. Bunderson*, 107 Wis. 2d 400, 414–15, 320 N.W.2d 175, 184 (1982). Whether the circuit court utilized the proper legal standard is a question of law we review *de novo*. *Three & One Co. v. Geilfuss*, 178 Wis. 2d 400, 410, 504 N.W.2d 393, 398 (Ct. App. 1993). Additionally, we will not set aside factual determinations made by the circuit court unless the findings are clearly erroneous. WIS. STAT. § 805.17(2) (1999–2000).[3]

**Unjust Enrichment.**

¶ 9. Ulrich contends that the circuit court applied an improper standard of law to her unjust enrichment claim. Ulrich argues that the circuit court "erroneously applied the unjust enrichment standard to each parcel of land" rather than considering the overall scope of their joint enterprise and dividing the property accordingly. We agree.

¶ 10. Unmarried cohabitants may raise a claim based upon unjust enrichment following the termination of their relationship where one party attempts to retain an unreasonable amount of the property acquired through the efforts of both. *Watts*, 137 Wis. 2d at 532–33, 405 N.W.2d at 314. Such a claim is "grounded on the moral principle that one who has received a benefit has a duty to make restitution where retaining such a benefit would be unjust." *Id.* at 530, 405 N.W.2d at 313. An unjust enrichment action requires "proof of three elements: (1) a benefit conferred on the defendant by the plaintiff, (2) appreciation or knowledge by the defendant of the benefit, and (3) acceptance or reten-

---

[3] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

tion of the benefit by the defendant under circumstances making it inequitable for the defendant to retain the benefit." *Id.* at 531, 405 N.W.2d at 313.

¶ 11. In nonmarital cohabitation actions, proof of the above three elements is demonstrated by showing: (1) an accumulation of assets, (2) acquired through the efforts of the claimant and the other party, and (3) retained by the other party in an unreasonable amount. *Waage v. Borer*, 188 Wis. 2d 324, 329–30, 525 N.W.2d 96, 98 (Ct. App. 1994). Or stated succinctly, the party claiming unjust enrichment must show that the parties engaged in a joint enterprise or mutual undertaking to accumulate assets. *See Watts*, 137 Wis. 2d at 533, 405 N.W.2d at 314. Once a party demonstrates the existence of a joint enterprise, equity principles demand that the parties be treated fairly and all assets accumulated as part of the joint enterprise be divided accordingly. A division of property otherwise would allow one party to benefit by retaining an unreasonable amount of property acquired through the efforts of both.

¶ 12. The circuit court, therefore, erred by analyzing Ulrich's unjust enrichment claim asset by asset. The proper legal standard requires the court to instead analyze the character of the parties' relationship by inquiring whether the relationship was a joint enterprise which encompassed the accumulation of assets. A court makes this determination by considering the total circumstances of the parties' relationship, specifically whether the parties' contributed property and services to the relationship producing an increase in wealth. *See id.* Any assets acquired during the time period when the parties acted as a joint enterprise must be divided equitably between the parties unless the court deter-

189

mines that the contested asset was acquired by independent means, outside the joint enterprises's domain.

¶ 13. Our reasoning is supported by our analysis in *Ward v. Jahnke*, 220 Wis. 2d 539, 583 N.W.2d 656 (Ct. App. 1998), where we held that a female cohabitant failed to satisfy the *Watts* standard because she lacked evidence of a mutual undertaking. *Ward*, 220 Wis. 2d at 550–51, 583 N.W.2d at 661. In *Ward* Dennis Jahnke and Sandra Ward agreed to live at Ward's apartment and that she would take responsibility for most living expenses so he could save for a down payment on a house. *Id.* at 544, 583 N.W.2d at 659. Jahnke purchased a home and he and Ward moved in together. *Id.* The court held that for the time period prior to Jahnke's purchase of the house, the couple engaged in a shared effort to accumulate a down payment on a house, substantiating her claim of unjust enrichment. *Id.* at 550, 583 N.W.2d at 661. The court, however, rejected Ward's claim for the time period following the purchase of the home because the evidence did not show a mutual effort toward the accumulation of assets. *Id.* The character of the relationship had changed and because it no longer embodied a joint enterprise to accumulate assets, her claim of unjust enrichment necessarily failed.

¶ 14. Applying the proper legal standard to the facts here, we conclude that Ulrich and Zemke acted as a joint enterprise to raise a family and accumulate assets together until their separation in January of 1997. During the approximately seven years the parties engaged in this joint enterprise, Ulrich and Zemke functioned as a family unit. Together they maintained a house, raised four children, shared living expenses and continually acquired real and personal property. Significantly, any proceeds realized by the sale of the parties'

190

real estate, including Badger, were continually reinvested into the relationship until Ulrich and Zemke separated in 1997.

¶ 15. Zemke argues that the court properly awarded him Badger because the evidence demonstrated a "changed" financial relationship regarding the purchase of Badger. Zemke points out that Ulrich did not specifically participate in the Badger investment; Zemke negotiated the purchase, arranged for the land survey, prepared necessary documents and paid the real estate tax and interest on the debt. We disagree with Zemke's argument. During the period of their cohabitation, Ulrich and Zemke's financial relationship remained constant. The parties commingled their finances, shared expenses and acquired property through joint effort.[4] Ulrich testified that when Zemke purchased Badger she did not approve because "if he had been paying his share of monthly bills and . . . grocery bills, he wouldn't have had any money to make a payment with." Ulrich's contribution to the relationship enabled Zemke to purchase Badger. It is therefore immaterial that Ulrich did not directly participate in the acquisition and maintenance of Badger.

¶ 16. Accordingly, we reverse the circuit court's judgment awarding Zemke sole ownership of Badger without requiring a credit against the equalization payment in Ulrich's favor, and we remand to the circuit court to determine an appropriate means of dividing Badger.

---

[4] For example, both Ulrich and Zemke made regular monthly mortgage payments on Buttercup and Zemke later used Buttercup as collateral to secure Badger.

**Factual Determinations.**

■■

¶ 17. Ulrich also argues that the circuit court made erroneous findings of fact regarding the value of the parties' real estate and credits to be afforded to each party and consequently calculated the equalization payment incorrectly. To substantiate her argument, Ulrich points to the following: (1) the court found that Badger was subject to a $42,350 mortgage, however, both parties testified that when they separated, the mortgage balance was $32,000, (2) the court found that Zemke sold two parcels of Badger for $11,500 and $23,700 but did not address whether the sale affected the equalization payment, (3) the court did not properly adjust the equalization payment for proceeds retained by Zemke for the sale of two parcels of Buttercup sold for $12,500 and $2,520 and (4) because the court failed to explain its method of calculating the equalization payment, Ulrich is unable to discern how the court reached a payment of $36,043. We consider Ulrich's claims in turn.

¶ 18. With regard to point one, both Ulrich and Zemke testified that at the time of trial, the mortgage owed on Badger was $42,491. The mortgage balance was greater at trial because following the parties' separation, Zemke borrowed money against Badger to pay child support and birthing costs. Therefore, on remand, we instruct the court to begin its division of Badger using the mortgage balance owed when the parties separated, which according to the record was $32,000. We leave it to the court's discretion to adjust that debt amount if any part of the increase in the mortgage

192

balance was due to a debt for which Ulrich should also be responsible under the scope of the parties' joint enterprise.[5]

██

¶ 19. With regard to point two, we disagree with Ulrich's argument that the court made erroneous findings of fact relating to the sale of two parcels of Badger that occurred on August 23, 1996 and October 23, 1996, prior to the parties' separation. Both Ulrich and Zemke testified that the proceeds realized from the sales, in the amounts of $11,500 and $23,700, were used to reduce the mortgage balance on the property, pay land survey costs, continue home improvements and that some may have gone into Zemke's savings. Because the proceeds were reinvested into the parties' joint enterprise, the circuit court did not need to consider the proceeds in calculating the equalization payment. However, following the parties' separation, Zemke sold a third parcel of Badger for $11,500 and retained the proceeds. On remand, we direct the circuit court to add this amount to the value of Badger so that Ulrich receives an equitable distribution of the proceeds realized from that sale.

██

¶ 20. We address points three and four together because both attack the methodology employed by the circuit court to calculate the equalization payment. Ulrich argues that the court did not properly adjust the

---

[5] Zemke testified that he borrowed money against the mortgage to pay birthing expenses for Ulrich and Zemke's two children. Birthing costs could be considered an expense of their joint enterprise. However, we leave it to the circuit court to determine whether Ulrich is responsible for some amount of the increase in the mortgage balance that is attributable to the birthing costs.

equalization payment for proceeds retained by Zemke for the sale of two parcels of Buttercup and that the payment is "erroneous" because the court failed to adequately explain its methodology. We disagree. Because the division of Ulrich and Zemke's property is discretionary, a circuit court should provide a reasoned explanation for its determinations. *See Watts*, 137 Wis. 2d at 530–34, 405 N.W.2d at 313–15; *Finley v. Finley*, 2002 WI App 144, ¶ 26, 256 Wis. 2d 508, 648 N.W.2d 536. However, when a circuit court does not explain its reasons for a discretionary decision, we may search the record to determine whether it supports the court's decision, *Randall v. Randall*, 2000 WI App 98, ¶ 7, 235 Wis. 2d 1, 612 N.W.2d 737, and we do so here.

¶ 21. Ulrich challenges the circuit court's calculation of a credit in the amount of $5728 for one-half the proceeds of the sale of Buttercup because the court did not explain how it calculated that amount. We reject her challenge as it is evident from the record that the court reached a credit of $5728 based on Zemke's testimony regarding the net value realized from the two sales after Zemke paid state and federal capital gain taxes. Ulrich also argues that the court's method of calculating the equalization payment is "erroneous" because it is "uncertain and unknown." However, upon careful review of the record, we were able to identify and replicate the court's figures and therefore conclude that the court's methodology was not erroneous. However, because the court failed to consider Badger in calculating the equalization payment, we cannot sustain the equalization payment as it currently stands. Accordingly, we remand to the circuit court to divide Badger and to revise the equalization payment consistent with this opinion.

194

## CONCLUSION

¶ 22. Because we agree that the circuit court applied an improper legal standard to Ulrich's unjust enrichment claim, we reverse the judgment awarding Zemke sole ownership of Badger. Additionally, because the equalization payment does not currently include consideration of Badger, we remand to the circuit court to recalculate the equalization payment consistent with this opinion. In all other respects, we affirm the judgment.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded.