IN RE the MARRIAGE OF:

Julia M. MEYER, Petitioner-Respondent-Petitioner,

v.

Joseph D. MEYER, Respondent-Appellant.

Supreme Court

*No. 99–0178. Oral argument September 5, 2000.—Decided December 22, 2000.*

2000 WI 132

(Also reported in 620 N.W.2d 382.)

731

732

For the petitioner-respondent-petitioner there were briefs by *Mary Anne Kircher* and *Bosshard & Associates*, La Crosse, and oral argument by *Sabina Bosshard*.

For the respondent-appellant there was a brief by *Daniel P. Ryan* and *Noble & Ryan, S.C.*, La Crosse, and oral argument by *Daniel P. Ryan*.

¶ 1. ANN WALSH BRADLEY, J. Julia M. Meyer (petitioner) seeks review of a published decision of the court of appeals that reversed the circuit court's maintenance determination and concluded that the court erroneously exercised its discretion.[1] She asserts that the circuit court properly exercised its discretion pursuant to the maintenance statute, Wis. Stat. § 767.26 (1995–96),[2] when it considered her premarital contributions to the education of her spouse, Joseph Meyer (respondent), while he was pursuing his undergraduate and medical degrees. Because we conclude that the consideration of premarital contributions by one spouse to the education of the other falls within Wis. Stat. § 767.26(9) and that the circuit court did not erroneously exercise its discretion in making its maintenance determination, we reverse the court of appeals.

¶ 2. This case arises from a relationship between the parties that spanned twelve years. During that

---

[1] *Meyer v. Meyer*, 2000 WI App 12, 232 Wis. 2d 191, 606 N.W.2d 184 (Ct. App. 1999) (reversing and remanding a judgment of the Circuit Court for La Crosse County, Ramona A. Gonzalez, Judge).

[2] Unless otherwise noted, all subsequent references to the Wisconsin Statutes are to the 1995–96 version.

period of time, the respondent received his undergraduate and medical degrees, completed his residency program in internal medicine, and was at the threshold of beginning his career as a physician.

¶ 3. The Meyers met and began dating in 1985. In the spring of 1986 they began living together at her apartment in Green Bay. At that time, the petitioner was working as a nurse, and the respondent was pursuing his undergraduate education at the University of Wisconsin–Green Bay.

¶ 4. During the time the parties lived together in Green Bay, a pattern was established that would last into the parties' subsequent marriage: the petitioner financially supported the household, and the respondent focused on his education. While she remained fully employed, first as a nurse and then as an insurance claims examiner, his employment was limited to irregular work and summer jobs. He funded his education primarily with student loans. In addition to her financial role, the petitioner also performed homemaking duties and assisted the respondent with his schooling by typing some of his college papers.

¶ 5. According to the petitioner's testimony, in late 1986 the respondent gave her a "promise ring" to symbolize the parties' commitment to one another. However, the parties did not become engaged to marry until 1989. Their engagement coincided with the couple's move to Milwaukee. The respondent decided to pursue a medical education in Milwaukee following completion of his undergraduate degree. In the autumn of 1989, he began his studies at the Medical College of Wisconsin.

¶ 6. During their four-year engagement, the petitioner continued to work while the respondent attended school. In Milwaukee, they lived together

first in an apartment and then in a house purchased in 1990. This home was purchased by the respondent's mother, but payments were made to her from the parties' joint checking account. The couple purchased a duplex in 1992 and shared in the rental income.

¶ 7. In 1993 the parties married, and their wedding ushered in several years of rapid change in their lives. At the time of their marriage, the respondent was still in medical school and the petitioner continued to work. In the spring of 1994, the respondent graduated from medical school. Following graduation the couple moved again, this time to La Crosse where the respondent began his residency program.

¶ 8. In La Crosse, the respondent worked to complete his residency, and except for periods of maternity leave, the petitioner continued to work in the insurance industry. After a short time in La Crosse, their first child was born. Soon thereafter, the petitioner became pregnant again and a second child was born. This second child died of sudden infant death syndrome in October 1995, while only months old. The respondent completed his residency in mid–1997. He then began practicing as a physician at a La Crosse clinic. At that time his monthly salary was $10,400 while hers was around $2,000.

¶ 9. In June 1997, just as the respondent was beginning his new career, the petitioner filed for divorce. According to her testimony, around the time of the death of their second child the couple began having marital problems that left the marriage irretrievably broken. In her original divorce petition, the petitioner requested maintenance. She later amended the petition to include a cause of action for unjust enrichment. With this claim she sought compensation for the sup-

port given to the respondent during their period of premarital cohabitation.

¶ 10. At trial, the court heard evidence relating to both causes of action. In addition to the testimony of each of the parties, the circuit court heard the testimony of an expert witness called by the petitioner. This witness testified to the value of the respondent's medical education and the petitioner's contributions to that education as calculated under the various methods approved by this court in *Haugan v. Haugan*, 117 Wis. 2d 200, 343 N.W.2d 796 (1984).

¶ 11. At the close of evidence, the court granted a judgment of divorce and ordered the respondent to make maintenance payments in the amount of $1,700 per month for eight years. In support of its maintenance decision, the circuit court listed numerous factors.[3] It cited the substantial energy the petitioner put into the birth and care of the parties' children. It also noted her continuous employment and homemaking contributions. In addition, the court was compelled by the fact that the respondent's student loans had been repaid during the marriage in part through a second mortgage on their La Crosse home, a mortgage that the petitioner assumed under the property division.

¶ 12. The primary focus of the court's findings, however, was the "very significant and substantial" contributions made by the petitioner to the respondent's "current status" and earning capacity, both before and during the marriage. The court explained:

[3] The circuit court also relied on these same considerations when it ordered an unequal property division. The respondent did not challenge the property division on appeal.

> The Respondent wanted to go to school, and the Petitioner made it easy for the Respondent to do that. She typed his papers and was there for him to do his laundry and make a home for. him. It was a relationship that the Respondent clearly benefitted from, and which enabled him to obtain his current education and resulting earning capacity as a practicing physician. . . .The Petitioner shared her bed, home, and income with the Respondent with the expectation that some day she would be a doctor's wife, and that is what she did become.

The court acknowledged that a four-year marriage would normally result in a maintenance award of a short duration. However, invoking principles of "fairness and equity," it stated that the petitioner's contributions to the respondent's earning capacity warranted the award.[4]

¶ 13.  Prior to ordering the maintenance award, the circuit court addressed the respondent's arguments that it could not consider the petitioner's contributions to his education that occurred prior to the marriage. The court looked to Wis. Stat. § 767.255(3)(f), which provides that a court may consider "[t]he contribution by one party to the education, training or increased earning power of the other."[5] Finding no language in

---

[4] The circuit court also suggested that the petitioner's unjust enrichment claim supported the award of maintenance. However, it declined to make any specific findings in that regard. Despite the fact that the circuit court did not base its decision on the unjust enrichment claim, the court of appeals proceeded to engage in a discussion of the issue. Because we uphold the circuit court's award of maintenance based on our reading of Wis. Stat. § 767.26(9), we do not address the unjust enrichment claim.

[5] The circuit court based both its property division and maintenance determinations in part on these premarital contri-

the provision restricting its application to contributions arising only during the marriage, the court found that it could properly consider those premarital factors. It noted that other provisions of the same statute, *e.g.*, Wis. Stat. § 767.255(3)(d),[6] contain language limiting application to the marital context.

¶ 14. The respondent appealed and the court of appeals reversed the circuit court's award of maintenance. The court of appeals, relying on *Watts v. Watts*, 137 Wis. 2d 506, 405 N.W.2d 303 (1987), and *Greenwald v. Greenwald*, 154 Wis. 2d 767, 454 N.W.2d 34 ( Ct. App. 1990), held that the circuit court erroneously exercised its discretion when it considered the premarital relationship in making its maintenance determination. The court construed our holding in *Watts* that unmarried persons could not pursue a property division under the divorce statutes and our discussion of legislative intent in *Watts* to preclude application of the Family Code to the premarital relationship.

¶ 15. With this case, we are presented with a question of statutory construction as it arises during the review of a circuit court's exercise of discretion. The amount and duration of a maintenance award are matters within the sound discretion of the circuit court. *King v. King*, 224 Wis. 2d 235, 247, 590 N.W.2d 480

---

butions. The statutory section cited by the circuit court is a provision of the property division statute, Wis. Stat. § 767.255(3)(f), and is identical to a provision of the maintenance statute, namely Wis. Stat. § 767.26(9).

[6] Wisconsin Stat. § 767.255(3)(d) instructs that the court is to consider "[t]he contribution of each party to the marriage, giving appropriate economic value to each party's contribution in homemaking and child care services."

(1999). We will uphold a circuit court's maintenance determination unless it erroneously exercises its discretion. *Id.* at 248. An erroneous exercise of discretion may arise from an error in law or from the failure of the trial court to base its decision on the facts in the record. *Id.* Statutory construction presents a question of law which we review independently of the determinations rendered by the circuit court and the court of appeals. *Theis v. Midwest Sec. Ins. Co.*, 2000 WI 15, ¶ 9, 232 Wis. 2d 749, 606 N.W.2d 162.

¶ 16.  We are asked today to decide whether the circuit court, in making its maintenance determination, erroneously exercised its discretion when it considered the premarital contributions by one spouse to the other spouse's education. In order to do so, we must examine the statute on which the compensation for such contributions is based.

¶ 17.  In the interpretation of any statute, we look first to the statutory language. *Jungbluth v. Hometown, Inc.*, 201 Wis. 2d 320, 327, 548 N.W.2d 519 (1996). If the meaning of the statute is plain, our inquiry is at an end, and we need not look beyond the language to ascertain its meaning. *Id.*

¶ 18.  We begin our review of this maintenance award by examining Wis. Stat. § 767.26. In applying this statute, a court has broad discretion in reaching fairness and equity through its award. Achieving such fairness and equity is a goal of any maintenance determination. *LaRocque v. LaRocque,* 139 Wis. 2d 23, 33, 406 N.W.2d 736 (1987).

¶ 19.  Section 767.26 provides a list of factors that a circuit court is to consider when making a mainte-

nance award.[7] These factors are the "touchstone of analysis" in maintenance cases. *LaRocque*, 139 Wis. 2d at 32.

¶ 20.   The factor set forth in subsection (9) directs a circuit court to consider: "The contribution by one party to the education, training or increased earning

[7] Wisconsin Stat. § 767.26 reads:

767.26   Maintenance payments. Upon every judgment of annulment, divorce or legal separation, or in rendering a judgment in an action under s. 767.02(1)(g) or (j), the court may grant an order requiring maintenance payments to either party for a limited or indefinite length of time after considering:

(1)   The length of the marriage.

(2)   The age and physical and emotional health of the parties.

(3)   The division of property made under s. 767.255.

(4)   The educational level of each party at the time of marriage and at the time the action is commenced.

(5)   The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.

(6)   The feasibility that the party seeking maintenance can become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and, if so, the length of time necessary to achieve this goal.

(7)   The tax consequences to each party.

(8)   Any mutual agreement made by the parties before or during the marriage, according to the terms of which one party has made financial or service contributions to the other with the expectation of reciprocation or other compensation in the future, where such repayment has not been made, or any mutual agreement made by the parties before or during the marriage concerning any arrangement for the financial support of the parties.

(9)   The contribution by one party to the education, training or increased earning power of the other.

(10)   Such other factors as the court may in each individual case determine to be relevant.

power of the other." Wis. Stat. § 767.26(9).[8] We find nothing in this language limiting the contributions to those that arose only during the marital period. This lack of limiting language indicates to us, as it did to the circuit court when it examined an identical provision, that the court may freely consider the total contributions and not merely those arising during the marriage.[9]

¶ 21. We know from the language of § 767.26(4) that when the legislature saw fit to limit the temporal scope of a factor, it did so explicitly. For instance, subsection (4) instructs the court to consider "[t]he educational level of each party at the time of marriage and at.the time the action commenced." Thus, under subsection (4) the inquiry is specifically directed to the *education obtained during the marriage*.

¶ 22. Indeed, to read the contributions to education in subsection (9) to be limited to those rendered during the marriage would render subsection (9) largely superfluous, because subsection (4) already covers education obtained during the marriage. In interpreting a statute we must avoid a construction that results in a portion of a statute being rendered

[8] The petitioner also argues that Wis. Stat. § 767.26(8) and (10) provide a basis for the maintenance award. Because we base our decision on subsection (9), we need not address these provisions.

[9] The dissent suggests that the legislative directive to consider the "length of the marriage" in Wis. Stat. § 767.26(1) should apply to all subsequently listed factors. Dissent at ¶ 67. Nothing in the statute indicates that subsection (1) has primacy over the other enumerated factors. Indeed, such a suggestion effectively would require us to rewrite the enumerated factors by adding limiting language where none currently exists.

superfluous. *Blazekovic v. City of Milwaukee*, 2000 WI 41, ¶ 30, 234 Wis. 2d 587, 610 N.W.2d 467.

¶ 23. The respondent argues that legislative intent as embodied in Wis. Stat. § 765.001(2) prevents any construction of the statute that allows for consideration of the petitioner's premarital contributions.[10] Section 765.001(2) provides a general statutory statement of legislative intent applicable to the four statutory chapters that comprise the Family Code. The statute makes a strong statement regarding the importance of marriage and family. It begins by stating that

---

[10] Wisconsin Stat. § 765.001 reads:

765.001 Title, intent and construction of chs. 765 to 768.
   (1) TITLE. Chapters 765 to 768 may be cited as "The Family Code".
   (2) INTENT. It is the intent of chs. 765 to 768 to promote the stability and best interests of marriage and the family. It is the intent of the legislature to recognize the valuable contributions of both spouses during the marriage and at termination of the marriage by dissolution or death. Marriage is the institution that is the foundation of the family and of society. Its stability is basic to morality and civilization, and of vital interest to society and the state. The consequences of the marriage contract are more significant to society than those of other contracts, and the public interest must be taken into account always. The seriousness of marriage makes adequate premarital counseling and education for family living highly desirable and courses thereon are urged upon all persons contemplating marriage. The impairment or dissolution of the marriage relation generally results in injury to the public wholly apart from the effect upon the parties immediately concerned. Under the laws of this state, marriage is a legal relationship between 2 equal persons, a husband and wife, who owe to each other mutual responsibility and support. Each spouse has an equal obligation in accordance with his or her ability to contribute money or services or both which are necessary for the adequate support and maintenance of his or her minor children and of the other spouse. No spouse may be presumed primarily liable for support expenses under this subsection.
   (3) CONSTRUCTION. Chapters 765 to 768 shall be liberally construed to effect the objectives of sub. (2).

the Family Code is intended to "promote the stability and best interests of marriage and the family." Thereafter, the legislature offers a brief catalogue of generalized policy goals and concerns and a description of the mutual obligations of the parties to a marriage.

¶ 24. The respondent asserts that the second sentence of § 765.001(2) should control our reading of the maintenance statute: "It is the intent of the legislature to recognize the valuable contributions of both spouses during the marriage and at termination of the marriage by dissolution or death." He reads the sentence as limiting the contributions that may be considered to those that arise "during the marriage."

¶ 25. At oral argument the respondent's counsel advanced that the legislature may have refrained from including a time limitation in the maintenance statute because such a limitation was clearly intended by this second sentence of § 765.001(2). However, the legislative history of the statutory language undermines such a position. This second sentence was not added until 1983, six years *after* enactment of the Divorce Reform Act and four years *after* the last revision of the maintenance statute. Ch. 105, Laws of 1977; § 33, ch. 196, Laws of 1979. Moreover, the sentence was added when the legislature enacted the Marital Property Act, with which it recognized, during the marriage, the contributions of both spouses. 1983 Wis. Act 186, § 46. We will not read a restriction into § 767.26(9) based on this postdated statement of legislative intent.

■

¶ 26. Additionally, while we recognize that in Wis. Stat. § 765.001(3) we are directed by the legislature to liberally construe the provisions of the Family Code to effect the objectives listed in § 765.001(2), we are not inclined to allow a generalized statement of

intent to override the plain language of a specific, substantive statutory provision. The rules of statutory construction generally require that specific statutory provisions take precedence over general provisions. *State ex rel. Auchinleck v. Town of LaGrange*, 200 Wis. 2d 585, 595–96, 547 N.W.2d 587 (1996).

¶ 27.  We believe a similar principle is applicable in a case such as this. On the one hand, the substantive provision is a specific factor set forth in § 767.26. On the other hand, the statement of legislative intent covers in broad fashion the entire panoply of concerns addressed by the four statutory chapters comprising the Family Code.

¶ 28.  Our refusal to restrict the application of § 767.26(9) based on § 765.001(2) is bolstered by the fact that the various statements of legislative intent that make up § 765.001(2) bear no historical relationship to the statutory provision at issue in this case. The legislature added the controlling provision in this case, Wis. Stat. § 767.26(9), to the statutes in 1979. § 33, ch. 196, Laws of 1979. It added this particular provision independent of any other § 767.26 factor. The language of subsection (9) first appeared in the identically phrased provision of the property division statute, now numbered Wis. Stat. § 767.255(3)(f), as part of the 1977 Divorce Reform Act. § 41, ch. 105, Laws of 1977. In contrast, some of the language of Wis. Stat. § 765.001(2) predates subsection (9) or its analog in the property division statute by almost two decades. § 4, ch. 595, Laws of 1959. The legislature added other language of the intent provision after it added subsection (9). 1983 Wis. Act 186, § 46.

¶ 29.  Our decision today is consistent with the limitations of liberal construction that we have discussed in the past. We have long stated that we would

744

refuse to read language into the plain language of a statute under the guise of liberal construction. *Lang v. Lang*, 161 Wis. 2d 210, 224, 467 N.W.2d 772 (1991); *Lukaszewicz v. Concrete Research, Inc.*, 43 Wis. 2d 335, 342, 168 N.W.2d 581 (1969). Furthermore, "[w]hat is called a liberal construction is ordinarily one which makes a statute apply to more things or in more situations than would be the case under a strict construction." *R.W.S. v. State*, 162 Wis. 2d 862, 871–72, 471 N.W.2d 16 (1991). Thus, the restrictive interpretation of subsection (9) urged by the respondent seems inconsistent with the concept of liberal construction, as we have generally described the concept in the past.

¶ 30. Despite the plain language of Wis. Stat. § 767.26(9), the court of appeals held that *Watts v. Watts*, 137 Wis. 2d 506, 405 N.W.2d 303 (1987), precludes any reading of the maintenance statute that allowed for consideration of premarital contributions. In *Watts*, we held that a property division under Chapter 767 was not available to unmarried couples. *Id.* at 519–20. We based this conclusion on a lack of legislative intent to allow unmarried couples to proceed under the divorce statutes. *Id.* In the case at hand, the court of appeals extended this concept to forbid consideration of premarital contributions in making maintenance determinations between divorcing parties.

¶ 31. *Watts* does not dictate the result reached by the court of appeals in this case. The respondent's and the court of appeal's reliance on it ignores the fundamental distinction between the facts of this case and those in *Watts*: unlike the parties in *Watts*, the parties in this case did marry and were married at the time maintenance was sought under Wis. Stat. § 767.26.

¶ 32. In *Watts*, the parties lived together for twelve years, never marrying. *Id.* at 513–14. At the end

745

of their relationship, the plaintiff sued the defendant to recover a share of the couple's property and compensation for her contributions to the relationship. *Id.* at 514. Her suit entailed several causes of action, among which was a property division action brought under Wis. Stat. § 767.255. *Id.* at 514–15. The plaintiff argued that she, the defendant, and their children constituted a "family," and therefore she was entitled to proceed under § 767.255, as it was part of the Family Code. *Id.* at 515. We held that unmarried cohabitants could not proceed under Wis. Stat. § 767.255, although we also concluded that the plaintiff could proceed in her causes of action based on contract, unjust enrichment, and partition. *Id.* at 521–38.

¶ 33. The portion of *Watts* relied upon by the court of appeals addressed only the availability of a proceeding under the divorce statutes. In a sense, the issue was whether an unmarried person had standing to pursue a property division under the divorce statutes. This case concerns the scope of such a statute in an action properly brought under the divorce statutes. Indeed, the action was not only proper, but when the petitioner sought to dissolve her marriage she was *required* to proceed under Chapter 767. Once properly proceeding under the divorce statutes, those statutory provisions control.

¶ 34. We acknowledge that in *Watts* we relied upon portions of Wis. Stat. § 765.001(2) in limiting the availability of a Wis. Stat. § 767.255 property division to married couples. *Id.* at 518–19. However, in *Watts* we were concerned with defining "family" and the applicability of the Family Code provisions in general. We deal here, however, with a specific statutory provision, Wis. Stat. § 767.26(9), addressing a specific

746

concern, the factors for a circuit court to consider in awarding maintenance payments.

¶ 35.  In addition to *Watts*, the court of appeals relied on its opinion in *Greenwald v. Greenwald*, 154 Wis. 2d 767, 791, 454 N.W.2d 34 (Ct. App. 1990). In *Greenwald*, a party to a divorce action argued that the circuit court erred in refusing to consider her premarital contributions to her husband when making its maintenance and property division determinations under the "catch-all" provisions of Wis. Stat. § 767.26(10) and § 767.255(12).[11] In upholding the circuit court, the court of appeals summarily concluded that the facts in *Greenwald* presented "the very situation addressed in *Watts*." *Id.* at 790. We disagree.

¶ 36.  Again, a pivotal distinction exists between the facts in *Greenwald* and the facts in *Watts*. In *Greenwald* the parties married, and in *Watts* they never married. Yet, the court in *Greenwald* extrapolated the holding in *Watts* for the premise that even if the parties subsequently marry, nothing premarital may be considered. Such a premise is inconsistent with the property division statute, Wis. Stat. § 767.255, addressed in *Watts*.

¶ 37.  Under a provision of § 767.255, a court is specifically instructed to consider "[t]he property brought to the marriage by each party." Wis. Stat. § 767.255(3)(b). The consideration of premarital property required by this statute contravenes the *Greenwald* court's premise that nothing premarital may be considered even if the parties subsequently marry. Thus the *Greenwald* court, in relying on *Watts*, failed to acknowledge the critical factual distinction between the two cases and also incorrectly extrapo-

---

[11] The catch-all provision of the property division statute is now numbered Wis. Stat. § 767.255(3)(m).

lated from *Watts* a premise that is inconsistent with the property division statute. Thus, to the extent that the language of the *Greenwald* court suggests that *Watts*, by extension, necessarily precludes premarital considerations, such language should not be relied upon as controlling authority.

¶ 38. Finally, we note that the dissent misconstrues the scope of today's holding. We stress that under this decision, it is not cohabitation which may justify a circuit court's discretionary decision to award maintenance, but rather it is the contribution to the education of the spouse which justifies the award.

¶ 39. Our opinion today is but another addition to a line of cases that we have described as "university degree-divorce decree" cases. *Haugan v. Haugan*, 117 Wis. 2d 200, 206, 343 N.W.2d 796 (1984); *Lundberg v. Lundberg*, 107 Wis. 2d 1, 318 N.W.2d 918 (1982); *Roberto v. Brown*, 107 Wis. 2d 17, 318 N.W.2d 358 (1982). This court has described a university degree-divorce decree case as follows:

> [W]hile one spouse pursues an undergraduate, graduate, or professional degree or license, the other works to support the couple and foregoes his or her own education or career and the immediate benefits of a second income which the student spouse might have provided. The couple typically expects that the degree will afford them a higher shared standard of living in the future. That standard of living is never realized by the supporting spouse when the marriage breaks up just as the newly educated spouse is beginning the long-awaited career.

748

*Haugan*, 117 Wis. 2d at 206–07.[12]

¶ 40.    In such cases, we have recognized "that the supporting spouse was entitled to be fairly compensated for the contribution to the support of the student spouse." *Id.* at 211. Further, we have stated that the maintenance and property division statutes "provide a flexible means by which the trial court may examine all the relevant circumstances of the particular case and can, in its discretion, award just compensation to a supporting spouse by using either maintenance or property division or both." *Id.* at 211.

¶ 41.    In essence, these university degree-divorce decree cases are about discretionary application of the relevant statutory provisions, including § 767.26(9), and the objective of fairness and equity underlying the statutes. *See Haugan*, 117 Wis. 2d at 207–11; *Lundberg*, 107 Wis. 2d at 12–15. In applying these statutes the circuit court has "broad discretion in rendering a fundamentally fair and equitable decision in each case." *Haugan*, 117 Wis. 2d at 211. When discussing fairness in the context of university degree-divorce decree cases, we have said "it is unfair. . .to deny the supporting spouse a share in the anticipated enhanced earnings while the student spouse keeps the degree and all the financial rewards it promises." *Id.* at 207.

¶ 42.    Here the circuit court determined that the language of § 767.26(9) did not restrict its consideration of the petitioner's premarital contributions to the

[12] Although the quoted passage from *Haugan* mentions foregone educational or career opportunities, the opinion later states that compensation under the divorce statutes may be had for contributions alone, where there is no evidence of foregone opportunities. *Haugan v. Haugan*, 117 Wis. 2d 200, 219, 343 N.W.2d 796 (1984).

respondent's education in making its maintenance determination. Moreover, the circuit court concluded that fairness and equity required this award of maintenance. Because we find no error in this exercise of discretion, we uphold the maintenance determination.

¶ 43.   In sum, because a circuit court's consideration of premarital contributions by one spouse to the education of the other falls within Wis. Stat. § 767.26(9), we conclude that the circuit court did not erroneously exercise its discretion in making its maintenance determination. Accordingly, we reverse the court of appeals.

*By the Court.*—The decision of the court of appeals is reversed.

¶ 44.   SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE *(concurring)*. I join the majority opinion. I write merely to observe that while subsection (9) is the most directly applicable of the factors, further justification for the circuit court's award is found in subsection (10). Furthermore, in some cases, subsection (8) may be helpful.

¶ 45.   Under subsection (10) a circuit court may consider "[s]uch other factors as the court may in each individual case determine to be relevant." This broad "catchall" provision exemplifies the flexibility that a circuit court has in crafting a fair and equitable remedy. Like subsection (9), the catchall contains no language limiting its scope to the marital period.

¶ 46.   I am authorized to state that Justices WILLIAM A. BABLITCH and DAVID T. PROSSER join this concurrence.

¶ 47. DAVID T. PROSSER, J. *(concurring)*. In this state, circuit courts have broad discretion in making maintenance determinations. In 1995 this court emphasized that "the amount and duration of maintenance is entrusted to the sound discretion of the circuit court." *Olski v. Olski*, 197 Wis. 2d 237, 243 n.2, 540 N.W.2d 412 (1995). "An appellate court will not disturb a circuit court's decision unless the circuit court erroneously exercised its discretion." *Id.* These principles of broad discretion in the circuit court and substantial deference by an appellate court were reaffirmed last year in *King v. King*, 224 Wis. 2d 235, 247–48, 590 N.W.2d 480 (1999).

¶ 48. The circuit court's broad discretion in maintenance determinations contrasts with its limited discretion in other areas of family law. For instance, absent certain circumstances, circuit courts are required to "presume that joint legal custody is in the best interest of the child" in custody determinations, Wis. Stat. § 767.24(2)(am) (1999–00), and they are "required to calculate the appropriate award of child support by using the DHSS percentage standards unless a party requests a deviation and the court finds that the percentage standards are unfair to the child or any party." *Evenson v. Evenson*, 228 Wis. 2d 676, 687–88, 598 N.W.2d 232 (Ct. App. 1999); *see also* Wis. Stat. § 767.25(1j) (1999–00).

¶ 49. Sound discretion in maintenance determinations must reflect consideration of the factors set out in Wis. Stat. § 767.26, but the factors in the statute do not appear to be weighted, implying that the weighting will be done by the circuit court.

¶ 50. In addition, the court's discretion is underscored by the broad catchall at the end of the section, in which the court may consider "such other factors as the

court may in each individual case determine to be relevant." Wis. Stat. § 767.26(10).

¶ 51. In this case, the circuit court awarded maintenance payments to Julia Meyer based in part upon her contribution to the education, training, and increased earning power of Dr. Joseph Meyer during the period from 1986 to 1997. Because Julia Meyer did not marry Joseph Meyer until 1993, she made more than seven years of contribution outside of the marriage. The circuit court thought these seven-plus years should count. In making the award, the court explained its determination by using the very words contained in Wis. Stat. § 767.26(9), "contribution. . .to the education, training, or increased earning power" of the other party. It emphasized that the statute did *not* "specifically say 'during the marriage.' " The court then observed:

> It is clear that other factors are to be considered specifically during the marriage.
>
> But, in this situation, where the parties have made contributions to—one party has made a contribution to the increased earning capacity and education of the other throughout their relationship, the Court is, in my mind, free to consider the total amount of the contribution and not just simply the contribution during the marriage because that's not what the statute says.
>
> . . .
>
> I do believe that, standing by itself, the contribution of Mrs. Meyer to the education, training, and increased earning capacity of Dr. Meyer is sufficient. . .to provide her some compensation under a fairness and equity argument in this case.

¶ 52. The circuit court is charged with the responsibility of ensuring "a fair and equitable financial arrangement between the parties in each individual case." *LaRocque v. LaRocque,* 139 Wis. 2d 23, 33, 406 N.W.2d 736 (1987). The court in this case articulated specific statutory language in making its award. It could have cited the even broader authority for its discretion in Wis. Stat. § 767.26(10). I cannot conclude on these facts that the circuit court erroneously exercised its discretion by making an error of law. Consequently, I join this court's strong majority opinion as well as the concurrence of Chief Justice Abrahamson.

¶ 53. I also note, as does the Chief Justice, that Wis. Stat. § 767.26(8) is potentially relevant in this case. This subsection is relevant to statutory interpretation because it explicitly entertains the possibility that "any mutual agreement" *before* marriage may be considered in the maintenance determination.

¶ 54. For the foregoing reasons, I concur.

¶ 55. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON and Justice WILLIAM A. BABLITCH join this concurrence.

¶ 56. DIANE S. SYKES, J. *(dissenting).* I respectfully dissent. The majority interprets Wisconsin's Family Code to authorize circuit courts to consider periods of premarital cohabitation in awarding maintenance in divorce actions. This is a form of "palimony," and I cannot find support for it in the language or purposes of the Family Code.

¶ 57. We know the Family Code does not apply to claims of parties who are dissolving non-marital cohabitation relationships. *See Watts v. Watts,* 137 Wis. 2d

506, 405 N.W.2d 303 (1987). Wisconsin law does not provide legal remedies for separating cohabitants except in the very narrow instance in which one party attempts to retain an unreasonable amount of property acquired during the relationship and the facts support application of a common law contract or quasi-contract theory. *Id.*

¶ 58.  This case is a variation on the theme. Here the issue is whether the Family Code authorizes compensation in the form of maintenance for periods of *premarital* cohabitation. The question is not whether the Family Code applies (it does), but how far it goes. If a man and a woman live together and then eventually marry, can the period of premarital cohabitation be combined with the marriage for purposes of evaluating an award of maintenance upon divorce?

¶ 59.  It may seem perfectly fair to answer this question "yes," and therefore affirm the circuit court's award of maintenance for Julia Meyer's many and significant contributions to Joseph Meyer's achievement of his medical degree during their lengthy premarital cohabitation, which was followed by a shorter marriage. After all, it is commonplace in today's society for couples to live together before marriage, and not unusual for one party to support the other while higher education and training is pursued during cohabitation, as was the case here.

¶ 60.  We are, however, bound by the unambiguous language of the maintenance statute, which cannot reasonably be read to authorize circuit courts to award maintenance for periods of premarital cohabitation. In addition, the quasi-contract theory of unjust enrichment does not extend to "palimony," but only to cases involving the unjust retention of property by one party

754

to the cohabitation relationship. Accordingly, I would affirm the court of appeals.

¶ 61. The maintenance statute provides that "[u]pon every judgment of annulment, divorce or legal separation" the circuit court may award maintenance after considering a broad list of factors:

(1) The length of the marriage.

(2) The age and physical and emotional health of the parties.

(3) The division of property made under s. 767.255.

(4) The educational level of each party at the time of marriage and at the time the action is commenced.

(5) The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.

(6) The feasibility that the party seeking maintenance can become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and, if so, the length of time necessary to achieve this goal.

(7) The tax consequences to each party.

(8) Any mutual agreement made by the parties before or during the marriage, according to the terms of which one party has made financial or service contributions to the other with the expectation of reciprocation or other compensation in the future, where such repayment has not been made, or any mutual agreement made by the parties before or during the marriage concerning any arrangement for the financial support of the parties.

(9)   *The contribution by one party to the education, training or increased earning power of the other.*

(10)   Such other factors as the court may in each individual case determine to be relevant.

Wis. Stat. § 767.26 (emphasis added).

¶ 62.   The majority rests its decision entirely on subsection (9), which directs circuit courts to consider "[t]he contribution by one party to the education, training or increased earning power of the other." The majority reasons that because subsection (9) contains no language limiting the evaluation of this factor to the "marital period," circuit courts "may freely consider the total contributions and not merely those arising during the marriage." Majority op. at ¶ 20. Thus, according to the majority, circuit courts are free to expand the scope of the inquiry beyond the "marital period" to include any premarital cohabitation that may have preceded it. The majority characterizes this as a "plain language" reading of the statute.

¶ 63.   I disagree. The majority approach reads subsection (9) in isolation and ignores the obvious import of the statute as a whole. We are, after all, interpreting a law that pertains to the circuit court's powers and obligations upon the dissolution of a contract of *marriage.* Marriage is commonly and legally understood to begin when a man and a woman in fact marry, not when they start living together.[1]

---

[1] Wisconsin Stat. § 765.16 provides that marriage can be entered into only after a marriage license has been issued and only by the mutual declarations of the parties to be joined as husband and wife before a "duly authorized officiating person" and two adult witnesses. Marriages contracted in violation of the statutory requirements are void. Wis. Stat. § 765.21. Com-

¶ 64.   It is odd, therefore, that the majority finds the absence of any statutory language limiting subsection (9) to the "marital period" significant to the determination of whether premarital cohabitation can be included in the maintenance equation. I find the absence of language of *expansion* to be more significant than the absence of language of *limitation*. That is, since the dissolution of the *marriage* is the obvious focus of the statute, and since there is nothing in the text of subsection (9) expressly expanding the scope of the inquiry *beyond* the marriage, we can hardly interpret the statute as authorizing the circuit court to go outside the marriage to reach periods of premarital cohabitation in its maintenance decision.

¶ 65.   In fact, subsection (1) of Wis. Stat. § 767.26 directs the circuit court to consider "[t]he length of the marriage" when deciding the issue of maintenance. The statute does *not* say the circuit court should consider "the length of the marriage *plus any period of premarital cohabitation,"* or "the total length of the parties' *relationship,"* or any other combination of words that would explicitly or implicitly signal that premarital cohabitation is covered. The fact that the legislature did not repeat the "length of the marriage" factor as a sort of "qualifier" in each of the subsequent statutory subsections does not mean that courts are free to disregard it, adding premarital cohabitation to the mix in evaluating subsection (9) or any of the other enumerated factors in the maintenance statute.[2]

mon law marriages were abolished in 1917. § 21, ch. 218, Laws of 1917.

[2] Contrary to the majority's suggestion, I have not said that the "length of the marriage" subsection should be read into all the subsequent subsections of the maintenance statute, only that it informs our interpretation of the statute as a whole, and

¶ 66.   The majority purports to find support for its interpretation of subsection (9) in subsection (4) of the statute, which allows the circuit court to consider "[t]he educational level of each party at the time of marriage and at the time the action is commenced." The majority says the language of subsection (4) demonstrates legislative intent to impose a "temporal" limit on the evaluation of this particular maintenance factor. Therefore, the logic goes, the lack of similar limiting language in subsection (9) must mean that the legislature intended no temporal limit on the consideration of one party's contribution to the education of the other.

¶ 67.   But a legislative expression of limitation in one part of a statute does not always and necessarily imply limitlessness in another. This technique of interpretation is especially misplaced here, in light of the explicit reference to "the length of the marriage" in subsection (1) of the statute. Furthermore, it is a pretty broad interpretive leap from the "temporal" limitation in subsection (4) to the conclusion that subsection (9) authorizes "palimony" awards for premarital cohabitation. We are not really talking about temporal issues at all, but definitional ones: can premarital cohabitation be considered part of the marriage for purposes of evaluating the propriety, amount, and duration of a maintenance award upon dissolution of the marriage? Not, in my judgment, unless the legislature has said so very clearly. And it has not.

¶ 68.   The majority also believes that if subsection (9) is construed to refer to contributions made only during the marriage, it would be rendered "largely superfluous because subsection (4) already covers edu-

the question of whether it incorporates periods of premarital cohabitation into the marriage for purposes of a maintenance determination.

cation obtained during the marriage." Majority op. at ¶ 22. This misunderstands the difference between the two subsections. The former tells the circuit court to evaluate the *educational level* of *each party* at the time of the marriage and divorce; the latter tells the judge to consider the *contributions* made by *one party* to the education and training *of the other*. These are two very different inquiries, aimed at different considerations. The circuit court looks at the relative educational *levels* of the parties at the time of the marriage and divorce in order to evaluate post-divorce standard-of-living questions in the maintenance determination. The court looks to the educational *contributions* of one party to the other in order to provide some compensation for that "investment" in the form of a maintenance award. Interpreting subsection (9) to be confined to educational contributions made during the marriage creates no superfluity.

¶ 69.   The majority also disregards, wrongly I think, the legislature's very clear statement of intent that the Family Code pertains only to the institutions of marriage and the family, neither of which is defined in such a way as to include either non-marital or pre-marital cohabitation. The statement of legislative purpose is unequivocal:

> INTENT.   It is the intent of chs. 765 to 768 [the Family Code] to promote the stability and best interests of marriage and the family. *It is the intent of the legislature to recognize the valuable contributions of both spouses during the marriage and at termination of the marriage by dissolution or death.* Marriage is the institution that is the foundation of the family and of society. Its stability is basic to morality and civilization, and of vital interest to society and the state. . . . *Under the laws of this*

759

*state, marriage is a legal relationship between 2 equal persons, a husband and wife, who owe to each other mutual responsibility and support. Each spouse has an equal obligation in accordance with his or her ability to contribute money or services or both which are necessary for the adequate support and maintenance of his or her minor children and of the other spouse.*

Wis. Stat. § 765.001 (emphasis added).

¶ 70.  The majority dismisses the legislature's statement of intent by saying it is "postdated" and too general to override the "plain language of a specific, substantive statutory provision," that is, subsection (9) of the maintenance statute. But the majority's "plain language" interpretation of subsection (9) is plainly wrong, and the legislature's statement of the Family Code's purpose as a whole cannot be disregarded merely because it was enacted after the particular statutory provision in question. The legislature need not have repealed and recreated each and every section of the Family Code at the time it enacted its statement of intent in order to have that statement respected by the courts.

¶ 71.  The majority opinion is also inconsistent with the prior decisions of this court and the court of appeals on this issue.[3] In *Watts*, this court declined to

[3] The majority cites *Haugan v. Haugan*, 117 Wis. 2d 200, 343 N.W.2d 796 (1984), *Lundberg v. Lundberg*, 107 Wis. 2d 1, 318 N.W.2d 918 (1982), and *Roberto v. Brown*, 107 Wis. 2d 17, 318 N.W.2d 358 (1982), the so-called "university degree-divorce decree" cases, and concludes that this case is merely an addition to the genre. Majority op. at ¶ 39. None of these cases involved the question of whether to include premarital cohabitation as part of a property division or maintenance award in a divorce. Furthermore, while the circuit courts have broad discretion to

extend the Family Code to non-marital cohabitants based upon the clear and unambiguous language restricting its application to marriages and families "within the 'marriage' context." *Watts*, 137 Wis. 2d at 519. Indeed, the court found its conclusion "almost inescapable" based upon the language of the code:

> [T]he Family Code emphasizes marriage. The entire Family Code, of which ch. 767 is an integral part, is governed generally by the provisions of sec. 765.001(2), which states in part that "[i]t is the intent of chs. 765 to 768 to promote the stability and best interests of marriage and the family. . . .Marriage is the institution that is the foundation of family and of society. Its stability is basic to morality and civilization, and of vital interest to society and the state." (Emphasis supplied.) Section 765.001(3) further states that "[c]hapters 765 to 768 shall be liberally construed to effect the objectives of sub. (2)." The conclusion is almost inescapable from this language in sec. 765.001(2)(3) that the legislature not only intended chs. 765–768 to protect and promote the "family," but also intended "family" to be within the "marriage" context.
>
> The statutory prohibition of marriages which do not conform to statutory requirements, sec. 765.21, Stats. 1985–86, further suggests that the legislature intended that the Family Code applies, for the most part, to those couples who have been joined in marriage according to law.

---

make property division and maintenance decisions to achieve fairness and equity in individual cases, *Haugan*, 117 Wis. 2d at 211, this case involves an alleged error of law: the inclusion of premarital cohabitation in the maintenance determination without any statutory authority to do so. Accordingly, the "university degree-divorce decree" cases do not help the analysis.

On the basis of our analysis of sec. 767.255 and the Family Code which revealed no clear evidence that the legislature intended sec. 767.255 to apply to unmarried persons, we decline the invitation to extend the application of sec. 767.255 to unmarried cohabitants.

*Watts*, 137 Wis. 2d at 518–20.

¶ 72. The majority notes an important distinction between this case and *Watts*: there, the cohabiting parties never married and yet one attempted to invoke the Family Code upon dissolution of the relationship; here, the cohabiting parties eventually married and were therefore *required* to proceed under the Family Code upon divorce. This distinction speaks to the applicability of the Family Code but not to its scope. Yes, of course, the Family Code applies to this action, but what does it apply to: the marriage, or the marriage plus any period of premarital cohabitation that preceded it? As noted above, I find nothing in the language of the code, or its purposes, to support the latter answer to the question and much to support the former.

¶ 73. *Watts* gave effect to the language and expressed intent of the legislature in declining to extend the Family Code to non-marital cohabitation. I see no reason to interpret that same language and expressed legislative intent any differently in the case of premarital cohabitation.

¶ 74. Indeed, in *Greenwald v. Greenwald*, 154 Wis. 2d 767, 454 N.W.2d 34 (Ct. App. 1990), the court of appeals, based upon *Watts*, reached the same conclusion. Josephine and Darwin Greenwald lived together for ten years and were married for less than three. Josephine wanted the ten years of premarital cohabitation added to the much shorter marriage for purposes of the property division and maintenance determina-

tions at the time of the parties' divorce. The court of appeals concluded that the statutes would not allow it, for the reasons stated in *Watts*:

> Although *Watts* did not present a maintenance claim, we are persuaded that *Watts* also requires us to reject Josephine's claim that her premarital contribution to Darwin's estate is a relevant factor on her maintenance claim. After examining the Family Code's legislative history in Watts, the supreme court concluded that the code did not govern property divisions between unmarried cohabitants. We conclude that this same reasoning applies with equal force to Josephine's maintenance claim. . . .
>
> Nor are we persuaded that the parties' later marriage requires a different result. The matter at issue concerns Josephine's premarital contributions to Darwin's property—the very situation addressed in Watts.

*Greenwald,* 154 Wis. 2d at 790 (citations omitted).

¶ 75.  The majority undermines but does not overrule *Greenwald,* finding a distinction between premarital and non-marital cohabitation for purposes of interpreting the Family Code, and identifying Wis. Stat. § 767.255(3)(b) as an example of an allowable "premarital consideration" that undercuts *Greenwald*'s premise "that nothing premarital may be considered even if the parties subsequently marry." Majority op. at ¶ 37. However, Wis. Stat. § 767.255(3)(b), part of the property division statute, merely authorizes the circuit court to consider "[t]he property brought to the marriage by each party" in determining division of property in a divorce action. It cannot reasonably be read to support a conclusion that a period of premarital cohabitation may be considered as if it were part of the

763

marriage for purposes of a maintenance award under Wis. Stat. § 767.26.

¶ 76.   True, in Wis. Stat. § 767.255(3)(b) we find express legislative authorization for the consideration of "something premarital" in a divorce: property brought to the marriage by each party. The legislature is certainly free to authorize the consideration of other premarital factors—even premarital cohabitation—in the property division and maintenance statutes of this state. But it is the legislature's prerogative to do so, not ours. However tempted we may be to expand a statute's reach to achieve a result we believe to be fair, we are bound by the language of the law, absent unconstitutionality or other unusual circumstances not present here. The interpretive power resides legitimately in the judiciary, but we test the limits of our legitimacy when we extrapolate a statute's meaning from something not contained in its text, fairly and fully and reasonably construed. This is especially true in areas as socially and culturally sensitive as marriage, the family and divorce.

¶ 77.   There is nothing in the language of the maintenance statute or any part of the Family Code that authorizes circuit courts to consider contributions made by one party to the education of the other *during premarital cohabitation.* The majority's contrary conclusion is an unwarranted expansion of the scope of the maintenance statute. The lack of limiting language in subsection (9) is not an invitation to read more into the maintenance statute than its language, structure, and purpose as a whole will reasonably bear.[4]

---

[4] The concurrences suggest that subsection (8), which permits the circuit court to consider premarital agreements regarding financial compensation or support, and subsection (10), the so-called "catchall" provision of the statute, provide

¶ 78.   Finally, although the trial court and the majority did not need to reach the common law question in this case, I do. I agree with the court of appeals that the quasi-contract theory of unjust enrichment does not apply to these facts. *Watts* held that "unmarried cohabitants may raise claims based upon unjust enrichment following the termination of their relationships where one of the parties attempts to retain an unreasonable amount of property acquired through the efforts of both." *Watts*, 137 Wis. 2d at 532–33. An action for unjust enrichment requires: "(1) a benefit conferred on the defendant by the plaintiff, (2) appreciation or knowledge by the defendant of the benefit, and (3) acceptance or retention of the benefit by the defendant under the circumstances making it inequitable for the defendant to retain the benefit." *Id.* at 531.

¶ 79.   The court of appeals has held that the theory of unjust enrichment, as applied to a cohabitation

---

further justification for the circuit court's maintenance award. My conclusions about the proper interpretation of the maintenance statute apply with equal force to subsection (10). A "catchall" provision in a statute conferring decisionmaking discretion on the circuit court cannot be construed as conferring an unlimited license. Rather, it must be read in context, subject, at least, to whatever limitations in scope are explicit or implicit in the purposes of the statute as a whole. For the reasons I have already discussed, I do not think there is any justification for reading the "catchall" provision in the maintenance statute as authorizing the circuit court to expand the scope of the maintenance inquiry beyond the marriage to include compensation for periods of premarital cohabitation. In addition, regarding the applicability of subsection (8), there is no evidence in this case of a premarital agreement between the parties concerning financial compensation or support, and the circuit court made no findings in this regard. So subsection (8) cannot be invoked as authority for the maintenance award in this case.

claim, requires that "the complaining party present proof of specific contributions that directly led to an increase in assets or an accumulation of wealth." *Ward v. Jahnke*, 220 Wis. 2d 539, 547–48, 583 N.W.2d 656 ( Ct. App. 1998). The complaining party must demonstrate: "(1) an accumulation of assets, (2) acquired through the efforts of the claimant and the other party and (3) retained by the other in an unreasonable amount." *Waage v. Borer*, 188 Wis. 2d 324, 329–30, 525 N.W.2d 96 (Ct. App. 1994).

¶ 80.   In this case the circuit court found that Julia Meyer contributed in significant ways to Joseph Meyer's achievement of his medical degree while they lived together. These contributions, however, did not result in an accumulation of assets or property through the efforts of both. What Julia Meyer is really seeking is a share of Joseph Meyer's future earning potential as a result of having helped him earn his medical degree during their premarital cohabitation. Future earning potential is not an asset or property which can be recovered in an action for unjust enrichment by one cohabitant (non-marital *or* premarital) against the other.

¶ 81.   At present the law of unjust enrichment as applied to cohabitants is narrowly confined to situations in which one cohabitant unfairly retains property acquired through the efforts of both. I would not extend it further. To do so would open the door to all sorts of "palimony" claims. Our cases have not ventured far down this road, for good reason. To provide further measure of legal protection for cohabitation relationships via the common law is a serious step with substantial consequences for the institutions of marriage and the family. It would inject this court into a

social, cultural and policy debate which I think is better left to the legislative branch.

¶ 82. Accordingly, for these reasons, I would affirm the court of appeals' reversal of the trial court's award of maintenance in this case, and remand for reconsideration of the maintenance issue, excluding consideration of the Meyers' premarital cohabitation.

¶ 83. I am authorized to state that Justices JON P. WILCOX and N. PATRICK CROOKS join this dissent.