COURT OF APPEALS
DECISION
DATED AND FILED

November 6, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2025AP311**

STATE OF WISCONSIN

Cir. Ct. No. 2021FA157

IN COURT OF APPEALS
DISTRICT IV

IN RE THE MARRIAGE OF:

SHEILA JEAN COOK,

PETITIONER-APPELLANT,

V.

DANA MATTHEW COOK,

RESPONDENT-RESPONDENT.

APPEAL from an order of the circuit court for Sauk County: MICHAEL P. SCRENOCK, Judge. *Affirmed.*

Before Graham, P.J., Blanchard, and Kloppenburg, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Sheila Jean Cook appeals the portion of a divorce judgment that requires Dana Matthew Cook to pay Sheila $1,150 per month in maintenance for eight years beginning January 1, 2024.[1] Sheila argues that the circuit court erroneously exercised its discretion in setting maintenance at that amount because the court "failed to provide any reasoned explanation" for doing so. In a closely related argument, Sheila argues that the court erroneously exercised its discretion in setting the maintenance amount for the specific reason that the court purportedly did not take into account income tax benefits to Dana resulting from the fact that part of his compensation is from military retirement pay, including disability payments. As a result, Sheila argues, the court had a mistaken understanding that Dana has less post-tax income than he does. Sheila fails to support a developed argument on either of these issues and, accordingly, we affirm.

## BACKGROUND

¶2 As explained further below, Sheila's arguments on appeal are not well supported. But, to the extent that Sheila might develop supported arguments, they each involve a narrow set of issues related to the amount of maintenance set by the circuit court in a February 10, 2025 decision and order ("the February 2025 decision"), which we now place in context.

¶3 In December 2023, following a four-day final hearing and the submission of post-hearing briefs, the circuit court issued findings of fact, conclusions of law, and a judgment of divorce ("the December 2023 decision").

---

[1] We refer to the parties by their first names because they have the same last name.

The court held open the issues of maintenance and child support, requesting and receiving additional briefing from the parties on those issues. Specifically, the court asked for submissions addressing Sheila's gross monthly income (all income before taxes or deductions) to assist the court in making factual findings regarding the parties' respective incomes and earning capacities.

¶4     In May 2024, the circuit court issued findings of fact and a decision and order addressing maintenance and child support ("the May 2024 order"). In the May 2024 order, as pertinent here, the court determined the following: Sheila's gross monthly income from the operation of a landscaping business was $4,302; and Dana's gross monthly income, from his military retirement pension and his active role in the operation of his father's trucking business, was $7,567.

¶5     The May 2024 order recognized that a circuit court making a maintenance decision must take into account the factors specified in WIS. STAT. § 767.56 (2023-24) that are relevant to the circumstances, with the primary objectives being fairness and support.[2] *See* **LaRocque v. LaRocque**, 139 Wis. 2d 23, 32-33, 406 N.W.2d 736 (1987) (There are two "distinct but related objectives in the award of maintenance: to support the recipient spouse in accordance with the needs and earning capacities of the parties (the support objective) and to ensure a fair and equitable financial arrangement between the parties in each individual case (the fairness objective)."). With those legal standards in mind, the circuit court determined that a nearly equal division of the parties' incomes would be appropriate, slightly favoring Sheila because she "has no meaningful retirement [or] pension assets" due to the fact that "the parties did not plan for Sheila's

---

[2] All references to the Wisconsin Statutes are to the 2023-24 version.

support during her retirement." Applying that determination to the incomes of the parties, the court ruled that Dana must pay Sheila $1,650 per month in maintenance for eight years, and also directed that Dana pay $404 per month for child support based on the income levels established by the circuit court and the statutory factors set forth in WIS. STAT. § 767.511.

¶6      Dana timely moved the circuit court for reconsideration of the May 2024 order as it related to the calculation of maintenance. Dana argued that, because the parties had disputed what amounts the court should assign to each party as income before the court issued the May 2024 order, the parties had not been able to present their positions about the effects that income taxes would have on their respective incomes before they learned the income levels that the court would assign to each of them. Dana further contended that, when tax consequences were taken into account for the income levels that were assigned by the court, it would not serve the goal of nearly equal division of income to require Dana to pay maintenance of $1,650 per month, but instead it would disproportionately favor Sheila.

¶7      In August 2024, the circuit court held a hearing ("the August 2024 hearing") on Dana's motion for reconsideration. At the August 2024 hearing, the court acknowledged that, in arriving at the maintenance payment amount of $1,650 per month, the court had not considered income tax consequences. The court agreed with Dana that the court needed to reconsider its initial maintenance amount because it was obligated to consider the tax consequences to the incomes of both parties in calculating maintenance, to apply a better understanding of their after-tax earnings or net income. *See* WIS. STAT. § 767.56(1c)(g).

¶8 In addition, the circuit court discussed another correction that the court needed to make to its calculation of the amount of maintenance that Dana should pay Sheila. This additional correction was based on the sequence in which courts are to calculate child support and maintenance obligations when, as here, one former spouse (here Dana) is making both sets of payments to the other (here Sheila). The court said that, in setting the amount of maintenance in the May 2024 order, the court had not, as it should have, taken into consideration that Dana's income would be reduced by the amount of child support payments that he would have to pay Sheila. Accordingly, the court said, in considering the level of Dana's income for the purpose of calculating maintenance amounts, the court needed to account for Dana's child support payments, which as noted above the court had set at $404 per month based on the income levels established by the court. *See* WIS. ADM. CODE § DCF 150.03(6) (November 2008) ("If a payer will have obligations for both child support and maintenance to the same payee, the court shall determine the payer's child support obligation under this chapter before determining the payer's maintenance obligation under WIS. STAT. § 767.56.").

¶9 Also at the August 2024 hearing, Sheila's counsel called as a witness Diane Payne, who testified that she is "licensed to practice before the IRS," but is not a certified public accountant. Payne primarily testified based on a document that she had generated at the request of Sheila's counsel. According to Payne, her document "corrected" alleged omissions or errors in maintenance-related calculations that Dana's counsel had submitted to the circuit court. Payne testified that the omissions or errors were that: neither the federal Social Security tax nor the state income tax should have been applied to at least part of Dana's retirement income; for some years, Dana could claim to be the head of household able to claim the child deduction; Sheila's earned income needed to be considered subject

to the self-employment tax; and Sheila would be entitled to two deductions not reflected in Dana's submission.

¶10    At the close of the August 2024 hearing, the circuit court said that it considered itself to be in a position to reconsider the maintenance amount. In its reconsideration, the court would introduce to its analysis the tax consequences to the parties' incomes—while still operating from the premise that a nearly equal division of income slightly favoring Sheila is appropriate in this divorce.[3]  This would include the assumption that the parties would alternate years in which to claim the child tax deduction and also giving Dana credit for the child support payments.  Further considerations, the court noted, would include what the court discerned to be the absence of a dispute between the parties about the fact that Dana's retirement income is taxed differently from his earned income at both the federal and state levels.

¶11    The circuit court invited the parties to submit additional exhibits and argument if either thought that $1,650 per month would not be appropriate when taking into account the tax consequences and the effect of Dana's child support payments on his net income.  But the court also said that it saw no need for yet another hearing for the parties to present arguments about "every facet of their income taxes," such as the various itemized deductions that either might attempt to claim.  The court noted that Dana's motion for reconsideration raised tax consequences, which the court would address based on all relevant information

_____

[3] Neither party on appeal questions the circuit court's approach of aiming for a nearly equal division of income, slightly favoring Sheila, to determine the maintenance amount.

provided by the parties, but the court said that it did not consider itself obligated to consider "all sorts of tax return scenarios."

¶12  The circuit court made clear at the August 2024 hearing that the court would be relying solely on its assessments of the parties' submissions, other evidence, and their arguments. In particular, the court would not itself attempt to create one or more versions of maintenance-calculation spreadsheets using commercially available software, such as "TaxCalc." The court gave two reasons for not itself attempting to generate such spreadsheets.[4] The first was a black-box problem: the court was concerned that it could not know what algorithms or formulas such a software system might rely on to produce particular results. Second, even assuming that such software tools could be used appropriately and reliably under some circumstances, the court feared that it might produce faulty results by inserting numbers incorrectly.

¶13  After the August 2024 hearing, both sides provided to the circuit court submissions, which included attachments purporting to calculate relevant numbers, and additional arguments.

¶14  In the February 2025 decision that Sheila challenges, the circuit court stated that it found "most helpful" three scenarios described in Dana's post-August 2024 hearing submissions. The court concluded that the maintenance amount of $1,650 per month that it originally set "is materially inequitable."

---

[4] To clarify, the circuit court did not discourage the parties from themselves submitting spreadsheets of any kind, and on several occasions the court asked clarifying questions about the nature and content of a spreadsheet submitted by a party.

Instead, taking into account the entire record, the court determined that $1,150 per month for a period of eight years satisfies both the fairness and support objectives.

## DISCUSSION

¶15     As summarized above, a circuit court making a maintenance decision must take into account the factors specified in WIS. STAT. § 767.56 that are relevant to the circumstances of the divorce, with objectives that include fairness and support.  *See* ***LaRocque***, 139 Wis. 2d at 32-33.

¶16     Regarding our standard of review, a circuit court's determination of a maintenance award is entrusted to "the sound discretion of the circuit court, and we will uphold such [a] determination[] unless the circuit court erroneously exercised its discretion." ***Steinmann v. Steinmann***, 2008 WI 43, ¶20, 309 Wis. 2d 29, 749 N.W.2d 145.  A circuit court erroneously exercises its discretion when the court "fails to consider the relevant factors, bases its award on factual errors, makes an error of law, or grants an excessive or inadequate award." ***Rohde-Giovanni v. Baumgart***, 2004 WI 27, ¶18, 269 Wis. 2d 598, 676 N.W.2d 452; ***Meyer v. Meyer***, 2000 WI 132, ¶15, 239 Wis. 2d 731, 620 N.W.2d 382 ("An erroneous exercise of discretion may arise from an error in law or from the failure of the [circuit] court to base its decision on the facts in the record.").  We uphold the circuit court's findings of fact unless they are clearly erroneous. ***Xiong v. Vang***, 2017 WI App 73, ¶46, 378 Wis. 2d 636, 904 N.W.2d 814.

¶17     On appeal, Sheila argues that this court should reverse the circuit court's February 2025 decision and direct the court to order maintenance of $1,650 per month, the amount that the court first thought was appropriate, before the court addressed the tax consequences and the fact that Dana's after-tax income would be reduced by the $404 per month he has to pay Sheila in child support.

¶18    We now address the two arguments Sheila makes on appeal, explaining why we reject each.

¶19    Sheila argues that the circuit court erroneously exercised its discretion in setting maintenance at $1,150 per month because the court "failed to provide any reasoned explanation" for doing so and that, by the court's "own admission," the court "did not understand the tax implications." As should be readily evident from our Background section above, this argument not only ignores major portions of the record, it distorts aspects of the record. We begin with the distortions.

¶20    In her appellate briefing, Sheila tries to create the false impression that the circuit court admitted that the court did not understand, and that it had no interest in trying to understand, the effects that income taxes should have in deciding the amount of maintenance to order. Sheila attempts to create this false impression by quoting, out of context, statements made by the court that we summarize in part above. But, when the statements are interpreted in context, it is obvious that the court conveyed *the opposite* of what Sheila tries to suggest. That is, the court: sought to understand the tax implications; invited all of the evidence and argument that the parties had to present on these topics; and, after digesting all of that, came to believe that it sufficiently understood the very issues that Sheila now argues that the court ignored.

¶21    The circuit court explicitly recognized that the tax consequences needed to be taken into account in the maintenance-amount calculation and it gave the parties ample opportunities to fill in those particular blanks in the analysis. Further, the court went out of its way to make clear to the parties that—for reasons that we consider to be well justified—the court was not going to attempt to create

9

its own spreadsheet. Instead, the court patiently explained that it would rely on the parties to provide the information and analysis needed to resolve these issues, including any spreadsheets of any kind that they wanted to submit. And, in rendering its decision, the court explicitly identified three scenarios described in Dana's post-August 2024 hearing submissions as helpful in arriving at a maintenance amount that takes into account the elements that the court made clear needed to be addressed in a revised ruling.

¶22 Once Sheila's distortions of the record are put to the side, the following observations are sufficient to address whatever may remain of the substance of her no-reasoned-explanation argument. The circuit court unambiguously relied on two different sets of data to support its decision to set maintenance at $1,150 per month, which to repeat the court transparently explained it had not considered when it previously set maintenance at $1,650 per month. The two sets of data were: (1) the $404 per month in child support that Dana would have to pay Sheila with his after-tax income; and (2) spreadsheets generated and submitted to the court by Dana after the August 2024 hearing supporting alternative monthly maintenance of $1,089, $1,069, or $1,025. These three numbers are all close to, and below, the amount that the court settled on in the end. Sheila fails to show that, in relying on this evidence in the context of the entire record, the court did not consider the relevant factors, that it based its award on factual errors, that it made an error of law, or that it granted too little in maintenance.

¶23 In the closely related argument, Sheila specifically contends that the circuit court erroneously exercised its discretion because it did not take into account income tax benefits to Dana resulting from the fact that part of his compensation is from military retirement pay, including disability payments. But,

as the Background summary above reveals, the court explicitly recognized this particular dynamic and there is ample record support for the number that the court arrived at. Sheila fails to demonstrate that the court did not properly take into account, in the course of exercising its discretion, tax benefits to Dana.[5]

¶24 For all of these reasons, we affirm the challenged order.

*By the Court*.—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[5] At times in her briefing on appeal, Sheila may intend to suggest that the circuit court erred in the May 2024 order in determining the respective gross earnings of the parties. If so, she fails to provide a developed argument to that effect.

Separately, Sheila's request for relief in this court is that we "reinstate" the previously set maintenance amount of $1,650 per month. But she fails to provide a clear explanation as to why we should conclude that this is the correct amount. Further, this would not be the correct remedy if, as she contends, the circuit court erroneously exercised its discretion because it did not take relevant information into account. The correct remedy would be for this court to remand the case to the circuit court for that court to properly exercise its discretion based on all relevant information, not for this court to purport to exercise the circuit court's discretion for it. *See **King v. King***, 224 Wis. 2d 235, 254, 590 N.W.2d 480 (1999) (when circuit court erroneously exercises its discretion in addressing maintenance "the correct course of action is to reverse the award and remand the case to the circuit court"). In any case, however, as we have explained, Sheila fails in the first instance to show an erroneous exercise of discretion.